OPINION OF THE COURT
Joseph J. Kunzeman, J.
This case presents for determination the issue of the liability of the City of New York for injuries sustained by recreational users of skateboards upon public sidewalks. The facts are essentially undisputed. On the afternoon of April 10, 1976 plaintiff, then 14 years old, was injured when the skateboard upon which he was riding hit a break in the sidewalk causing *233 him to fall. The scene of the accident was less than two blocks from plaintiffs residence.
A municipality owes a duty to all persons lawfully using the sidewalks to exercise care in maintaining them in a reasonably safe condition for their ordinary, customary and usual modes of use. This duty inures, as well, to children at play. (See McGuire v Spence, 91 NY 303; McGarry v Loomis, 63 NY 104; see 19 McQuillin, Municipal Corporations, §§ 54.11a, 54.48 et seq.) The court finds no difficulty in ascribing liability to a negligent municipality where a child is injured while walking, skipping, jumping, hopping or pursuing similar activities. The difficulty is in formulating a rule that would require a municipality to make the sidewalks safe for their use by means of an inherently dangerous instrumentality propelled by the user. It should be noted that neither party has submitted any cases in this State dealing specifically with sidewalk skateboarding. There have, however, been other cases involving different coasting devices which are persuasive.
In Levy v City of New York (255 App Div 857, affd 280 NY 637), the infant plaintiff sledding along a Brooklyn sidewalk was injured when the sled struck a tree stump. In reversing the judgment for the plaintiff and dismissing the complaint, the Appellate Division for the Second Department stated: "There is no obligation on the part of the city to maintain the sidewalk in such a condition as to make it safe for those using it for coasting on sleds. Nor could the city be expected to anticipate the danger.”
In Roberto v City of New York (35 AD2d 782, mot for lv to app den 27 NY2d 489), the Appellate Division, Second Department, affirmed a judgment dismissing the complaint of a 14-year-old bicyclist who was injured when he rode over a three-inch drop in the sidewalk. And the complaint of an eight-year-old plaintiff who was seriously injured when his bicycle fell into a large hole on the sidewalk was also dismissed in Rivera v City of New York (39 AD2d 606, affd 32 NY2d 726).
Plaintiff contends that Levy, Rivera and Roberto must be viewed in the context of section 1907 of the Penal Law, which was in effect at the time of the accidents and that thus the cases are distinguishable. That section provided, inter alia: "A person who wilfully and without authority or necessity drives any * * * vehicle * * * along or upon a sidewalk is punishable by a fine of fifty dollars or imprisonment”.
Unquestionably, the statute entered into the judicial process *234 in Levy and Roberto. In Levy, the court stated: "Moreover, by coasting on the sidewalk the infant plaintiff was violating the statute. (Penal Law, § 1907.)” Also in Hart v Town of Brookhaven (261 App Div 923), the court stated: "In riding the bicycle on the sidewalk plaintiff wife was violating the statute (Penal Law, § 1907) and was guilty of contributory negligence as a matter of law.” In Rivera, however, the relevance of the section became less clear. Mr. Justice Pino in dismissing the complaint stated: "While the Appellate Division in this case [Roberto v City of New York] did not render an opinion, this Court reasons that basically the Appellate Division affirmed for the reason that it has long been the rule of this state that a municipality is bound only to keep its sidewalks in a reasonably safe condition for their ordinary use, and that no negligence is chargeable to the city in this type of accident. It may also be that the Appellate Division feels that some of the city’s other arguments are valid, in particular, that an infant can be charged with contributory negligence as a matter of law in this kind of a situation”. Although the Appellate Division affirmed the judgment dismissing the complaint merely citing Roberto, the purport of the majority decision was clarified by the dissenting opinion which stated: "We are not here concerned with contributory negligence, the only question arising by reason of the trial court’s ruling, in dismissing the complaint, that 'a municipality is bound only to keep its sidewalks in a reasonably safe condition for their ordinary use, and that no negligence is chargeable to the city in this type of an accident.’” (Rivera v City of New York, supra, p 607.)
That the Appellate Division was, in fact, propounding a rule that there was no common-law duty to make sidewalks safe for infant bicyclists, irrespective of any criminal statute, was made clear in Olsen v City of New York (49 AD2d 884). On the night of May 25, 1970, Karen Olsen, one of the infant plaintiffs, then 15 years old, was riding as a passenger on the bar which joins the bicycle handle bars to the seat. The plaintiffs were traversing the crosswalk over the Clearview Expressway in Queens. In so doing, they rode over what they perceived to be a puddle. Instead, the water hid a hole, three feet long, one foot wide and one foot deep. The bicycle fell into the hole causing both plaintiffs to be thrown resulting in serious injury. Before submitting the case to the jury the Trial Judge noted that section 1907 of the Penal Law had been *235 omitted and was not contained in the new Penal Law effective September 1, 1967. The jury found for the plaintiffs, which judgment was affirmed by the Appellate Term. The Appellate Division, Second Department, however, reversed the judgment for the plaintiffs on the law stating (p 885): "Defendant owes no duty to maintain its sidewalks and walkways in a condition reasonably safe for infant bicyclists (Rivera v City of New York, 39 AD2d 606, affd 32 NY2d 726).” Thus, the existence of the former Penal Law section is not a basis for distinguishing the cases.
As plaintiff contends, some jurisdictions have imposed liability for sidewalk defects by analogizing infant bicyclists to travelers. (See LeMay v City of Oconto, 229 Wis 65 [tricycle].) Interestingly, the Trial Judge in Olsen did the same thing, saying that since the only way for the infant plaintiffs to return home was to traverse the pedestrian walkway; that, therefore, the walkway was not equivalent to a sidewalk and plaintiffs were, in reality, travelers. The Appellate Division again appears to have laid this issue to rest. In any event, the instant plaintiff could, by no stretch of the imagination, be considered a traveler even if the concept were a viable alternative. (See Ann., 88 ALR2d 1423.)
Finally, plaintiff cites Caronia v Muller (250 App Div 722 [roller skating]); Jermane v Forfor (108 Cal App 2d 849 [lying face down on a four-wheel scooter]); Leopold v Williams (54 Ohio App 540 [roller skating]), all of which hold that infant plaintiffs riding in the street were "pedestrians” under traffic regulations where they were involved in a collision with a motor vehicle. The court does not perceive of such holdings as mandating the conclusion that roller skaters, bicyclists or skateboarders, are therefore pedestrians on the public sidewalks. It should be noted, parenthetically, that in Jermane, the court remarked that a sled going downhill on snow at 15 to 25 miles per hour might be considered a vehicle. Skateboards under some circumstances are capable of achieving such speeds.
There is little difference as far as the application of the law is concerned between the activities in Levy, Roberto, Rivera and Olsen and the instant case. In fact the nature of skateboarding itself provides a more forceful reason for the application of the rules. The court notes that although the infant plaintiff had passed the particular spot innumerable times without difficulty, the first time he used a skateboard he was *236 injured. It is clear that it was only the use of the skateboard which brought about such a calamity.
That this accident happened; that others will continue to happen, can be predicated with almost awesome certainty. It is beyond peradventure that without proper equipment, including helmet, knee and elbow pads and a masterty of the technique, skateboarding is inherently dangerous. Possessing no braking system, once a rider has lost control or has fallen off, the skateboard will, by inertia, continue on its own, menacing unwitting pedestrians. This alone is sufficient to refuse to expand the city’s liability. The answer is, of course, in the establishment of skateboard parks designed specifically to accommodate the novice as well as the expert. The young people of this country have often petitioned for such facilities. It would be anything but foolhardy, however, to believe that they will abstain from skateboarding until their pleas are acted upon. Until such time, the pursuit of this sport will continue to resolve itself into a matter of flesh and concrete. Neither empathy nor sympathy however, is the basis for liability where none exists.
Accordingly, judgment is granted in favor of the defendant, dismissing the complaint.