CHARLES E. OLSON, a Minor, by Janet E. Olson, his Mother and Next Friend, Plaintiff-Appellant, v. THE VILLAGE OF OAK LAWN, Defendant-Appellee.— (WIEBOLDT STORES, INC., et al., Defendants.)

First District (1st Division)   No. 81-1404

Opinion filed February 16, 1982.

Fred Lambruschi, of Chicago (A. Mark Ialongo, of counsel), for appellant.

Jacobs, Williams and Montgomery, Ltd., of Chicago (Barry L. Kroll and David E. Morgans, of counsel), for appellee.

JUSTICE GOLDBERG delivered the opinion of the court:
Summary judgment was entered in favor of the Village of Oak Lawn (defendant) and against Charles E. Olson (plaintiff), a minor who appears by Janet E. Olson, his mother and next friend. Plaintiff has appealed.

Plaintiff was seriously injured on February 24, 1977, by a fall while riding a skateboard on a public sidewalk running north and south on the west side of Laramie Street in defendant village. Plaintiff's second

amended complaint charged defendant with negligence in that one slab of the sidewalk was dropped and displaced with a resulting disparity apparent at the joinder of the two slabs. In count II of his complaint plaintiff joined Wieboldt's Stores, Inc., which had allegedly sold plaintiff a device known as a skateboard. Counts III and IV of the complaint were against Santa Monica Research, Inc., a corporation, allegedly the manufacturer of the skateboard which was described as unreasonably dangerous. This appeal involves only the summary judgment entered on count I.

Defendant's motion for summary judgment includes a copy of the second amended complaint; answer of defendant thereto; the deposition of the plaintiff; photographs of the site of the occurrence; a written memorandum filed by defendant; an answering memorandum filed by plaintiff; and a reply memorandum filed by defendant.

On the date of the occurrence, plaintiff was 13 years old. Plaintiff lived at 10720 South Laramie in the defendant village. The mishap occurred some six houses south of plaintiff's home on the sidewalk on the west side of Laramie Street. Plaintiff had previously ridden the skateboard on the walk, but this was the first time he had used it at the point of the accident. Plaintiff had walked over that portion of the sidewalk without the skateboard several times a week for some years without any problem.

Plaintiff testified he was going south at the time and did not see the disparity between the two sidewalk slabs. When the skateboard passed over the drop, plaintiff was "sling-shotted" forward and fell upon his hands and knees. He did not know the dimension of the disparity but he stated one slab was higher than the other. He generally proceeded on the skateboard without looking at the sidewalk as he went. On this particular occasion he did not see the sidewalk disparity.

Pursuant to the pertinent statute (Ill. Rev. Stat. 1979, ch. 110, par. 57(3)), summary judgment is properly granted when the record reveals " 'no genuine issue as to any material fact' " and also that the moving party is entitled to summary judgment " 'as a matter of law.' " See *Smith v. Metropolitan Sanitary District* (1979), 77 Ill. 2d 313, 320, 396 N.E.2d 524, quoting from *Econo Lease, Inc. v. Noffsinger* (1976), 63 Ill. 2d 390, 393, 349 N.E.2d 1.

In the instant case there is no dispute as to any material fact. The problem arises in determining whether defendant is entitled to a judgment as a matter of law. " 'It is fundamental that there can be no recovery in tort for negligence unless the defendant has breached a duty owed to the plaintiff.' " (*Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 208, 399 N.E.2d 596, quoting from *Boyd v. Racine Currency Exchange, Inc.* (1973), 56 Ill. 2d 95, 97, 306 N.E.2d 39.) The question of existence of a duty which is defined as "the legal obligation imposed upon

one for the benefit of another, is a question of law to be determined by the court * * *." *Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 555, 328 N.E.2d 538; see also *Bence v. Crawford Savings & Loan Association* (1980), 80 Ill. App. 3d 491, 492, 400 N.E.2d 39.

It is a definitely accepted principle of law that a municipality owes the general public a duty of taking the necessary steps to maintain its sidewalks in a reasonably safe condition. Where the defect is such that " 'a reasonably prudent man should anticipate some danger to persons walking' " upon the sidewalk, a factual issue as to the existence of negligence by the municipality is presented. (*Baker v. City of Granite City* (1979), 75 Ill. App. 3d 157, 160, 394 N.E.2d 33, *appeal denied* (1979), 79 Ill. 2d 619, quoting from *Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 605, 145 N.E.2d 105.) However, this principle has been evolved by the courts in connection with the rights of pedestrians. In the case at bar, we are concerned with a minor riding a skateboard upon a municipal sidewalk. This requires initially an examination of the skateboard and its operation.

The skateboard is described in the record. Basically, it is a board mounted on two wheels in the front and two in the back. It has no brakes, no motor and no steering device. The operator places one foot on the board and pushes the skateboard until it gains speed. He is then able to place both feet upon the board and to proceed at a goodly pace. The machine is propelled entirely by the rider. It has no vertical handle at the front end. The operator can change its direction only by shifting his weight. Able counsel for plaintiff makes the point "skateboards have attained wide popularity and the trial court in its opinion recognized and took notice of their wide use."

We find no authority in Illinois bearing directly upon the pertinent legal issue here. However, the following authorities are of value:

In *Cygielman v. City of New York* (1978), 93 Misc. 2d 232, 402 N.Y.S. 2d 539, a 14-year-old operator of a skateboard was injured because of a break in the sidewalk. The court formulated the duty of the municipality as that of reasonable care in maintaining a reasonably safe condition for "ordinary, customary and usual modes of use." (93 Misc. 2d 232, ___, 402 N.Y.S.2d 539, 540.) The court cited precedents involving means of transportation such as a sled and a bicycle. The court stated that the nature of the skateboard was such that it was the use of this device which brought about the injury. The court also noted:

> "That this accident happened; that others will continue to happen, can be predicted with almost awesome certainty. It is beyond peradventure that without proper equipment, including helmet, knee and elbow pads and a mastery of the technique, skateboarding is inherently dangerous. Possessing no braking sys-

tem, once a rider has lost control or has fallen off, the skateboard will, by inertia, continue on its own, menacing unwitting pedestrians. This alone is sufficient to refuse to expand the City's liability. The answer is, of course, in the establishment of skateboard parks designed specifically to accommodate the novice as well as the expert. The young people of this country have often petitioned for such facilities. It would be anything but foolhardy, however, to believe that they will abstain from skateboarding until their pleas are acted upon. Until such time, the pursuit of this sport will continue to resolve itself into a matter of flesh and concrete. Neither empathy nor sympathy however, is the basis for liability where none exists." (93 Misc. 2d 232, ___, 402 N.Y.S.2d 539, 542.) The New York court entered judgment in favor of defendant, dismissing the complaint.

In *Errante v. City of New York* (1979), 98 Misc. 2d 896, 414 N.Y.S.2d 603, the court held there was a municipal duty to maintain the sidewalks in proper condition for the use of persons traveling on roller skates. The court cited *Cygielman* and expressly differentiated the use of roller skates as a contrast to a "skateboard, sled, bicycle or other such user-propelled coasting device * * *." The New York court then used this language:

"As the aforementioned cases illustrate, municipalities have consistently been found free from liability in negligence for injuries sustained as a result of uses of their sidewalks which are not customary. In all of these cases, it was the skateboard, sled, bicycle or other such user-propelled coasting device of the injured party which removed the case from what the City was expected to contemplate as the ordinary usage of its sidewalks. The extra degree of speed which can be attained by such devices and the limited amount of control which can be exercised in their use makes them inherently dangerous in and of themselves. It was for this reason that the City did not owe a duty to make its sidewalks safe for their use." 98 Misc. 2d 896, ___, 414 N.Y.S.2d 603, 604.

In *Bartell v. Palos Verdes Peninsula School District* (1978), 83 Cal. App. 3d 492, 147 Cal. Rptr. 898, plaintiffs' son suffered fatal injuries in playing a game involving the use of a skateboard upon a school playground. The California court held there was no duty and hence no liability upon the school authority. The court pointed out that the injuries "were the direct result of the dangerous conduct of plaintiffs' son and his companion and not of any defective or dangerous condition of the property." 83 Cal. App. 3d 492, 497, 147 Cal. Rptr. 898, 900.

The basic nature of the skateboard necessarily renders virtually any sidewalk variation dangerous to its operator. Therefore, to impose a duty on municipalities to insure that sidewalks are safe for skateboard riders,

would drastically expand the current duty to maintain sidewalks. (See, *e.g., Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 604, holding minor defects are unactionable as a matter of law.) We believe such an expansion of this duty would result in devastating public expense without affording appreciably greater safety for skateboard riders.

We conclude a municipality owes no duty regarding sidewalk conditions when injuries result from riding a skateboard upon the sidewalk. The order for summary judgment in favor of defendant is accordingly affirmed.

Judgment affirmed.

McGLOON and O'CONNOR, JJ., concur.