JACQUELYNNE LARSON, Plaintiff-Appellant, v. THE CITY OF CHICAGO, Defendant-Appellee.

First District (1st Division)   No. 85—1341

Opinion filed March 24, 1986.

82

Baskin, Server, Berke & Weinstein, of Chicago (Lisa Berke Urban, of counsel), for appellant.

James D. Montgomery, Corporation Counsel, of Chicago (Jennifer A. Keller, Assistant Corporation Counsel, of counsel), for appellee.

JUSTICE O'CONNOR delivered the opinion of the court:

This negligence action arose when plaintiff, Jacquelynne Larson, was injured while roller skating on a public sidewalk in a residential neighborhood in Chicago. Her complaint alleged that defendant, city of Chicago, negligently failed to maintain, repair or inspect the sidewalk in question. Pursuant to defendant's motion, the trial court dismissed her complaint for failure to state a cause of action. Plaintiff now appeals. We reverse and remand.

■■ When reviewing the trial court's dismissal of plaintiff's complaint, all well-pleaded facts are taken as true. (*Palatine National Bank v. Charles W. Greengard Associates, Inc.* (1983), 119 Ill. App. 3d 376, 378, 456 N.E.2d 635.) A cause of action should not be dismissed on the pleadings unless it clearly appears that no set of facts can be proved which will entitle plaintiff to recover. *Resag v. Washington National Insurance Co.* (1980), 90 Ill. App. 3d 971, 973, 414 N.E.2d 107.

■■ ■ Initially, defendant contends that it has no duty to maintain its sidewalks in a reasonably safe condition for roller skating. A duty is an obligation imposed by law which requires one to conform to a certain standard of conduct for the protection of another against an unreasonable risk. (*Fancil v. Q.S.E. Foods, Inc.* (1975), 60 Ill. 2d 552, 328 N.E.2d 538; *Barnes v. Washington* (1973), 56 Ill. 2d 22, 26, 305 N.E.2d 535.) The liability of a municipal corporation is governed by the Local Governmental and Governmental Employees Tort Immunity Act. (Ill. Rev. Stat. 1983, ch. 85, pars. 1—101 through 10—101 (hereinafter cited as Governmental Tort Immunity Act).) Section 3—102(a) of this act provides:

> "Except as otherwise provided in this Article, a local public entity has the duty to exercise ordinary care to maintain its property in a reasonably safe condition for the use in the exercise of ordinary care of people whom the entity intended and permitted to use the property in a manner in which and at such times as it was reasonably foreseeable that it would be used ***."

The Governmental Tort Immunity Act essentially continued the common law duties of a municipality with respect to the maintenance of

its public ways. *Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 294, 393 N.E.2d 725.

Under common law principles, it has long been held that a municipality is required to maintain its streets and sidewalks in a reasonably safe condition for the amount and kind of travel which may be fairly expected upon them. (*City of Chicago v. Keefe* (1885), 114 Ill. 222, 2 N.E. 267; *Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 393 N.E.2d 725. However, "the law does not exact of a municipality the duty of keeping all sidewalks in perfect condition at all times, and slight inequalities in level, or other minor defects frequently found in traversed areas are not actionable." (*Arvidson v. City of Elmhurst* (1957), 11 Ill. 2d 601, 604, 145 N.E.2d 105.) While these principles have primarily been applied in the context of pedestrians injured by a defect in a sidewalk (see *Olson v. Village of Oak Lawn* (1982), 104 Ill. App. 3d 501, 503, 432 N.E.2d 1120, *appeal denied* (1982), 91 Ill. 2d 560), they have also been applied in cases involving bicyclists (*Molway v. City of Chicago* (1908), 144 Ill. App. 509, *affirmed* (1909), 239 Ill. 486), children at play (*City of Chicago v. Keefe* (1885), 114 Ill. 222, 2 N.E. 267; *Casey v. City of Chicago* (1914), 189 Ill. App. 188), and physically handicapped persons (*City of Fulton v. Green* (1902), 103 Ill. App. 96; see generally 9 Ill. L. & Prac. *Cities, Villages, & Other Municipal Corporations* sec. 525 (1954 and 1985 Supp.)). No Illinois decision has involved a person injured while roller skating on a public sidewalk.

However, the duties of a municipality with respect to a minor injured while riding a skateboard on a municipal sidewalk were examined in *Olson v. Village of Oak Lawn* (1982), 104 Ill. App. 3d 501, 432 N.E.2d 1120. There, the court held that "a municipality owes no duty regarding sidewalk conditions when injuries result from a skateboard upon the sidewalk." (104 Ill. App. 3d 501, 505, 432 N.E.2d 1120.) In reaching its decision, the *Olson* court relied in part on *Cygielman v. City of New York* (1978), 93 Misc. 2d 232, 402 N.Y.S.2d 539. The New York court in *Cygielman* held that the city owed no duty to make its sidewalks safe for skateboards which were found to be inherently dangerous because of the extra degree of speed which can be attained by such devices and the limited amount of control which can be exercised. (93 Misc. 2d 232, 236, 402 N.Y.S.2d 539, 542.) The court in *Olson* also relied upon a decision by a New York trial court in *Errante v. City of New York* (1979), 98 Misc. 2d 896, 414 N.Y.S.2d 603. The New York trial court in *Errante* expressly distinguished the use of roller skates from "a skateboard, sled, bicycle or other user-propelled coasting device," and held that there was a municipal duty to

maintain sidewalks in proper condition for use of persons traveling on roller skates because of the long history of such use. 98 Misc. 2d 896, 897-98, 414 N.Y.S.2d 603, 604.

Since *Olson* was decided, the law in New York has evolved. The lower court decision in *Errante* was affirmed by the New York appellate division, but on different grounds. (74 App. Div. 2d 122, 123, 427 N.Y.S.2d 18, 19.) In particular, the appellate division in *Errante* refused to distinguish between roller skaters, persons on skateboards, bicyclists, and other users of city sidewalks. (74 App. Div. 2d 122, 123, 427 N.Y.S.2d 18, 19.) Instead, the liability of the city was tested by the same rule that would apply if the plaintiff had been walking and then had been injured. (74 App. Div. 2d 122, 124, 427 N.Y.S.2d 18, 19.) The appellate court in *Errante* stated:

> "We do not hold that the city has an obligation to keep its sidewalks safe for roller skating, as such, but only to maintain them in a reasonably safe condition for all reasonably foreseeable uses. [Citation.] Plaintiff is entitled to recover if the condition is found to be dangerous to all persons passing, whether walking or skating." (74 App. Div. 2d 122, 125, 427 N.Y.S.2d 18, 20.)

The rule in *Errante* was subsequently followed in New York in a case involving a bicyclist. *Muallem v. City of New York* (1981), 82 App. Div. 2d 420, 441 N.Y.S.2d 834, *affirmed* (1982), 56 N.Y.2d 866, 453 N.Y.S.2d 427, 438 N.E.2d 1142.

■ We believe that the rationale of the New York appellate court in *Errante* is sound, and we adopt it in the instant case. Recognition that the city owes a duty to maintain its sidewalks in a condition reasonably safe for all foreseeable users is consistent with Illinois case law regarding the common law duties of municipalities with respect to their sidewalks (see *City of Chicago v. Keefe* (1885), 114 Ill. 222, 227, 2 N.E. 267; *Warchol v. City of Chicago* (1979), 75 Ill. App. 3d 289, 393 N.E.2d 725; *Kaznowski v. City of La Salle* (1942), 316 Ill. App. 115, 43 N.E.2d 852 (abstract of opinion)), and with language of section 3—102(a) of the Governmental Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 3—102(a)).

■ Cases from other jurisdictions indicate that roller skating is a reasonably foreseeable use of municipal sidewalks. (See *Aquirre v. City of Los Angeles* (1956), 46 Cal. 2d 841, 299 P.2d 862; *Errante v. City of New York* (1979), 98 Misc. 2d 896, 414 N.Y.S.2d 603, *affirmed* (1980), 74 App. Div. 2d 122, 427 N.Y.S.2d 18; *Collins v. City of Philadelphia* (1910), 227 Pa. 121, 75 A. 1028.) Moreover, section 36-39 of the Municipal Code of Chicago indicates that roller skating is a con-

templated use of public sidewalks in Chicago. Section 36-39 provides:

"It shall be unlawful for any person to skate on roller or ice skates upon any public way in the city except on the sidewalks and at street intersections while crossing from one side of the street to the other." Chicago Municipal Code par. 36-39 (1983).

■ Our decision that the city owes a duty to keep its sidewalks in a reasonably safe condition for all foreseeable users will not expand the city's duty to maintain its sidewalks or result in added public expenditures on sidewalks. "[T]he question of the city's liability to a roller skater is a question of fact to be determined upon the particular facts of each case as governed by the general principle that the city's duty is no higher than its duty to an ordinary pedestrian." (*Errante v. City of New York* (1980), 74 App. Div. 2d 122, 125, 427 N.Y.S.2d 18, 20.) As our supreme court noted, the degree of care which a city is required to exercise to keep its streets and sidewalks in a reasonably safe condition varies according to the location, character, and extent of the use to which they were put. (*Zeh v. Wheeler* (1986), 111 Ill. 2d 266, 275, citing *Gilmore v. City of Chicago* (1906), 224 Ill. 490; see also *Warner v. City of Chicago* (1978), 72 Ill. 2d 100, 104, 378 N.E.2d 502.) Accordingly, we hold that cases like the one at bar must be determined by adherence to a single standard of reasonable care with foreseeability as the measure of liability and comparative negligence invoked when appropriate.

The city further contends that, even if it owes a duty to plaintiff, the trial court properly dismissed plaintiff's complaint pursuant to section 3—106 of the Governmental Tort Immunity Act (Ill. Rev. Stat. 1983, ch. 85, par. 3—106), since plaintiff failed to allege wilful and wanton misconduct. Section 3—106 provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used as a park, playground or open area for recreational purposes unless such local entity or public employee is guilty of willful and wanton negligence proximately causing such injury."

Because plaintiff was using the public sidewalk for recreational purposes, the city asserts that the scope of immunity granted by section 3—106 should be determined by how the public property is used by the injured party. We believe that this would be an unwarranted interpretation of section 3—106.

■ The purpose of that section is to encourage the development and maintenance of parks, playgrounds and maintenance of parks, playgrounds and similar areas. (*Beckus v. Chicago Board of Education*

(1979), 78 Ill. App. 3d 558, 397 N.E.2d 175.) A public sidewalk in a residential neighborhood is not similar to a park or playground which are open areas designated by a governmental entity as being specifically intended for recreational purposes. Moreover, defendant's interpretation of section 3—106 would shield the city from liability for its negligent maintenance of any street, sidewalk or open area in the city where the injured party has been engaged in recreational activity. Nothing in the statute indicates that the legislature intended to grant such a broad scope of immunity. Certainly, no case has interpreted this section so broadly, and we decline to do so today.

In conclusion, we reverse the trial court's dismissal of plaintiff's complaint and remand for further proceedings consistent with the views expressed herein.

Reversed and remanded.

BUCKLEY, P.J., and CAMPBELL, J., concur.