DJUAN T. DAVIS, a Minor by his Mother and Next Friend, Marsha Davis, Plaintiff-Appellee, v. CHICAGO HOUSING AUTHORITY, Defendant-Appellant.

First District (3rd Division)  No. 87—1008

Opinion filed November 30, 1988.

Jones, Ware & Grenard, of Chicago (Mitchell Ware, Frank M. Grenard, Josie M. Facianes, and Davis S. Allen, of counsel), for appellant.

Lawrence Schlam, of De Kalb, for appellee.

JUSTICE FREEMAN delivered the opinion of the court:

Defendant, the Chicago Housing Authority, a municipal corporation, prosecutes this interlocutory appeal under Supreme Court Rule 308(a) (107 Ill. 2d R. 308(a)) of the circuit court of Cook County's order vacating the dismissal of the second-amended complaint of the plaintiff, Djuan T. Davis, a minor, by his mother and next friend, Marsha Davis, and granting plaintiff leave to file a third-amended complaint. The question certified to this court is: "Whether paragraph 3—106 of the Illinois Tort Immunity Act applies to the Chicago Housing Authority, a municipal corporation."

Count I of plaintiff's second-amended complaint alleged that he sustained personal injuries as a result of defendant's negligence in the "ownership, operation, management, maintenance and control" of "an area at or near 2730 S. State Street, *** which area *** was provided by [d]efendant for private use by the tenants, residents, and their guests of its building at the said address and which was utilized [thereby] as a playground." Count II repeated the factual allegations in count I and further alleged that plaintiff's injuries resulted from defendant's willful and wanton conduct.

Defendant filed a motion to dismiss the second-amended complaint under section 2—615 of the Civil Practice Law (Ill. Rev. Stat. 1985, ch. 110, par. 2—615). Defendant asserted that the complaint inadequately alleged the actual or constructive notice to defendant of the unsafe condition of its property allegedly causing plaintiff's injuries, as required under section 3—102(a) of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1985, ch. 85, par. 3—102(a)). Defendant further asserted that the failure of count I of the complaint to allege willful and wanton conduct and of count II to allege facts supporting its allegation of such conduct required dismissal of the complaint pursuant to section 3—106 of the Tort Immunity Act. Section 3—106 provides that local public entities and employees are not liable for injuries "where liability is based on the existence of a condition of any public property intended or permitted to be used as a park, playground, or open area for recreational purposes" unless the entity or employee "is guilty of willful and wanton negligence proximately causing such injury." Ill. Rev. Stat. 1985, ch. 85, par. 3—106.

The trial court dismissed the second-amended complaint on the ground that it did not comply with section 3—102(a). The court further held section 3—106 inapplicable to the complaint. The court reasoned that section 3—106 dealt with parks or playgrounds open to the general public while the plaintiff alleged that the playground provided by defendant was for the private use of its tenants, residents and their guests. The court considered that a well-pleaded allegation had to be taken as true for purposes of the motion to dismiss. The trial court subsequently granted plaintiff's motion to vacate the dismissal of the second-amended complaint and for leave to file a third-amended complaint. The trial court ruled that the latter complaint's allegations of notice were sufficient to satisfy the constructive notice requirement of section 3—102(a). The court also reiterated its belief that section 3—106 was inapplicable for the reasons it had previously given.

On appeal, defendant contends that section 3—106 of the Tort Immunity Act applies to any property owned by a local public entity which is used as a playground. Specifically, it contends the trial court erred in construing that provision as requiring that a "park, playground, or open area for recreational purposes" provided by a local public entity be open to the general public before such entity may avail itself thereof.

In deciding the certified question, we are called upon to construe the Tort Immunity Act generally and section 3—106 thereof specifically. The rules governing our inquiry include:

"[T]he primary rule of statutory construction is to ascertain and effectuate the legislature's intent. In doing so a court looks first to the statutory language itself. If the language is clear, the court must give it effect and should not look to extrinsic aids for construction." (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 277, 469 N.E.2d 167.)

Moreover, the legislature has the power to define the terms used in a statute in any reasonable manner and such definitions must be sustained to the exclusion of nonstatutory alternatives (*Commonwealth Edison Co. v. Property Tax Appeal Board* (1984), 102 Ill. 2d 443, 457, 468 N.E.2d 948) or hypothetical indulgences (*Ballantine v. Bardwell* (1985), 132 Ill. App. 3d 1033, 1038, 478 N.E.2d 500). Finally, as the Tort Immunity Act is in derogation of the common law, it must be strictly construed against local public entities. *Reynolds v. City of Tuscola* (1971), 48 Ill. 2d 339, 342, 270 N.E.2d 415.

Applying these rules here, we conclude that the Tort Immunity Act applies generally to defendant and that section 3—106 specifically applies to the playground provided by defendant on which plain-

tiff was injured. We therefore answer the certified question in the affirmative.

■ Section 1—206 of the Tort Immunity Act defines a local public entity as including a municipal corporation. (Ill. Rev. Stat. 1985, ch. 85, par. 1—206.) The General Assembly has provided for the creation of housing authorities in the Housing Authorities Act (Ill. Rev. Stat. 1985, ch. 67½, par. 1 *et seq.*). Section 8 of that act provides, *inter alia,* that such authorities shall be municipal corporations. Therefore, defendant is a local public entity to which the Tort Immunity Act generally applies. See *Boyles v. Greater Peoria Mass Transit District* (1986), 113 Ill. 2d 545, 553-54, 499 N.E.2d 435.

■ Section 3—101 of the Tort Immunity Act provides:

"As used in * * * Article [III] unless the context otherwise requires 'property of a local public entity' and 'public property' mean real or personal property owned or leased by a local public entity." (Ill. Rev. Stat. 1985, ch. 85, par. 3—101.)

Thus, as used in section 3—106 of the Tort Immunity Act "public property" simply refers to property owned or leased by a local public entity which it intends or permits to be used as a park, playground or open area for recreational purposes, not property which is used for such purposes *and* is open to the general public. As such, we hold that the trial court erred in ruling that section 3—106 did not require the denial of the motion to vacate the dismissal of plaintiff's complaint as a matter of law.

■ Plaintiff concedes that "public property" as used in the Tort Immunity Act means "publicly owned" property and that playgrounds provided by defendant are such property. He argues, however, that section 3—106 was intended to provide immunity only for local public entities engaged in essential governmental functions, such as the development and maintenance of parks and playgrounds available for use by the general public. It was not intended, he concludes, to protect a public housing authority such as defendant fulfilling the essentially proprietary function of a landlord, especially where, as here, it acts voluntarily and beyond the scope of its statutory authority in "incidentally" maintaining a few structures or devices generally found in public playgrounds for the private use of its tenants. These arguments are unavailing to plaintiff.

The first paragraph of section 2 of the Housing Authorities Act provides, *inter alia:*

"It is hereby declared as a matter of legislative determination that in order to promote and protect the health, safety, morals and welfare of the public, it is necessary in the public interest

to provide for the creation of municipal corporations to be known as housing authorities *** and vest in said housing authorities all powers necessary or appropriate in order that they engage in low-rent housing and slum clearance projects, and undertake such land assembly, clearance, rehabilitation, development, and redevelopment projects as will tend to relieve the shortage of decent, safe, and sanitary dwellings; and that *the powers herein conferred upon the housing authorities *** are public objects and governmental functions essential to the public interest.* (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 67½, par. 2.)

Thus, as a general proposition, plaintiff incorrectly argues that a housing authority, such as defendant, performs merely proprietary, as opposed to essential governmental, functions. The legislature having declared that the powers conferred upon housing authorities are "governmental functions essential to the public interest," we would be engaging in that which plaintiff urges us to avoid, *i.e.*, judicial legislation, were we to hold that housing authorities, including defendant, merely perform proprietary functions. This we cannot do.

■ Moreover, the cases plaintiff cites in support of his arguments do not require us to hold that defendant does not fall within the coverage of section 3—106 of the Tort Immunity Act. In so concluding, we are mindful of the principle that the precedential scope of a decision is limited to the facts involved and is authority only for what is actually decided therein. *In re Marriage of Tisckos* (1987), 161 Ill. App. 3d 302, 514 N.E.2d 523.

Citing *Larson v. City of Chicago* (1986), 142 Ill. App. 3d 81, 491 N.E.2d 165, plaintiff argues that we should ignore the plain language of section 3—106 inasmuch as its application here would defeat the legislative intent behind that provision, *viz.*, to encourage the development and maintenance of public recreational areas for public use. *Larson* held section 3—106 inapplicable to public sidewalks used for recreational purposes. In so doing, the court noted that the purpose of section 3—106 is to encourage the development and maintenance of parks, playgrounds and other open areas to be used for recreational purposes (*Maloney v. Elmhurst Park District* (1970), 47 Ill. 2d 367, 370, 265 N.E.2d 654) and that, unlike parks and playgrounds, public sidewalks are not open areas designated and specifically intended for recreational purposes by public entities. *Larson*, 142 Ill. App. 3d at 86-87.

Plaintiff proceeds from the *Larson* court's reliance on the legislature's intent in enacting section 3—106, rather than its plain lan-

guage, to assert that defendant's playground, intended for the *private* use of its tenants and guests, is as dissimilar as a public sidewalk to the recreational property of those public entities, including park, school, and forest preserve districts, which do fall within the immunity granted under section 3—106 and therefore as little entitled to coverage thereunder.

■ Plaintiff's argument subtly, yet significantly, misconstrues the legislative intent behind section 3—106. Unlike plaintiff, no court has used the word "public" to describe the use intended of the parks, playgrounds and open areas for recreational purposes which section 3—106 seeks to promote. We do not suggest that section 3—106 is intended to provide immunity to private entities or institutions that maintain parks, playgrounds, or other open areas for recreational purposes. (See *Cooney v. Society of Mt. Carmel* (1979), 75 Ill. 2d 430, 389 N.E.2d 549.) However, we do not believe that a local public entity, to which section 3—106 is intended to provide immunity, can avail itself thereof only by making its property used for recreational purposes available to the general public. Rather, we believe that defendant's establishment of playgrounds to carry out the purposes of the Housing Authorities Act—which we explore further below—serves the true purpose of section 3—106, *i.e.,* to encourage the development and maintenance of parks, playgrounds and open recreational areas by any local public entity, as well as the establishment thereof by other local public entities having statutory purposes different than defendant's. As such, defendant is as entitled to the coverage of section 3—106 as local public entities which do make their recreational facilities available for public use.

*Harvey v. Clyde Park District* (1965), 32 Ill. 2d 60, 203 N.E.2d 573, which plaintiff cites as having implicitly required the General Assembly to limit any statutory governmental tort immunity, such as is codified in section 3—106, to local public entities providing recreational facilities for public, as opposed to private, use also fails to aid his cause. *Harvey* held that section 12.1 of the Park District Code (Ill. Rev. Stat. 1963, ch. 105, par. 12.1—1) was unconstitutional special legislation. That provision immunized park districts from liability for injuries or deaths resulting from negligence in the operation or maintenance of any property under their jurisdiction, control or custody. The specific language in *Harvey* upon which plaintiff relies is the court's observation that cities and villages, school districts and the State, as well as forest preserve and park districts, all maintained recreational facilities "available for public use." (*Harvey,* 32 Ill. 2d at 66-67.) As such, the court found unconstitutional the legislative scheme

barring any recovery for injuries sustained on forest preserve or park district property but allowing limited recovery for injuries sustained on State or school district property and full recovery for injuries sustained on recreational property of a city or village. The court observed, however, that it would be permissible to establish classifications for purposes of municipal tort liability "in terms of types of municipal function, instead of classifying among different governmental agencies that perform the same function." *Harvey*, 32 Ill. 2d at 67.

The language in *Harvey* upon which plaintiff relies must be read in the context of the legislative scheme at issue therein, which provided some governmental units total tort immunity, others with partial tort immunity and still others with no tort immunity, although they all performed the same function of providing recreational facilities for public use. The statute at issue here, in contrast, provides all public entities which perform the same municipal function, *i.e.,* the development and maintenance of parks, playgrounds, and open areas for recreational purposes, with total immunity without regard, as suggested in *Harvey,* to the different entities performing that function. The classification of local public entities achieved by section 3—106 is sufficient to overcome the defect in the legislative scheme at issue in *Harvey.* It was not necessary for the legislature to limit that classification to local public entities which make their recreational facilities available for public use to meet the supreme court's objections to the legislative scheme at issue in *Harvey.*

The cases which plaintiff cites as support for the proposition that housing authorities perform a merely proprietary function and/or act as mere volunteers when they provide playgrounds for their tenants and therefore are subject to a duty of ordinary care to prevent injury to them are also unavailing to him.

In two of these cases, *Pippin v. Chicago Housing Authority* (1979), 78 Ill. 2d 204, 399 N.E.2d 596, and *Phillips v. Chicago Housing Authority* (1982), 89 Ill. 2d 122, 431 N.E.2d 1038, the supreme court analyzed the issue of defendant's liability for the deaths of social guests and tenants caused by criminal conduct in terms of a landlord's duty to protect a tenant or guest from such conduct. The *Pippin* court noted the common law rule that a landlord has no such duty absent a special relationship to the injured party. Nonetheless, the court applied the rule that liability may arise from the negligent performance of a voluntary undertaking in view of defendant's having voluntarily contracted for security services on its premises by an independent contractor. (*Pippin,* 78 Ill. 2d at 208-09.) In *Phillips,* the

court applied the *Pippin* rationale to hold that defendant, having voluntarily undertaken to secure certain floors in one of its buildings, had a duty to perform that undertaking with ordinary care.

The issue in *Cole v. Housing Authority* (1979), 68 Ill. App. 3d 66, 385 N.E.2d 382, was the defendant's liability for injuries to a resident of one of its projects caused when she was struck with a metal stake used in construction for which the authority had contracted. The court analyzed the issue in terms of the authority's duty of ordinary care to avoid negligently causing plaintiff injury based upon her status as one of its residents, *i.e.,* the ordinary duty of a landlord with respect to the maintenance and control of property provided for its tenants.

Given that neither *Pippin, Phillips,* nor *Cole* addressed the issue here, *i.e.,* whether a housing authority may avail itself of the immunity provided by section 3—106 of the Tort Immunity Act, they do not compel us to answer that question in the negative. Moreover, nothing in these cases supports plaintiff's assertion that their holdings are based on a conclusion that the defendant housing authorities were engaged in a nongovernmental, merely proprietary, function, *viz.,* providing public housing. In view of section 2 of the Housing Authorities Act, that characterization of these cases is utterly meritless.

■■■ Plaintiff's assertion that defendant was acting beyond its statutory authority and thus as a mere volunteer held to a duty of ordinary care in establishing and maintaining the playground is meritless for an even more fundamental reason than the lack of support therefor in *Pippin, Phillips* and *Cole.*

Section 8.2 of the Housing Authorities Act provides:

> "An Authority has power *** to arrange with any government within the area of operation for the furnishing, *planning,* replanning, *opening* or closing of streets, *** alleys, *parks,* or other places of public facilities or for the acquisition by any government or any agency, instrumentality or subdivision thereof, of property *** *for the furnishing of property or services in connection with* [*the*] *project.*" (Emphasis added.) (Ill. Rev. Stat. 1985, ch. 67½, par. 8.2.)

We believe that this provision, to the extent it empowers housing authorities to arrange for the planning and opening of "parks or other places of public facilities" or for the acquisition of property "for the furnishing of property or services in connection with" a housing project, contemplates the planning and opening of playgrounds and the acquisition of property for that purpose as well. As stated in *Department of Revenue v. Joseph Bublick & Sons, Inc.* (1977), 68 Ill. 2d 568,

575, 369 N.E.2d 1279, quoting *Harding v. Albert* (1939), 373 Ill. 94, 96-97:

> "A statute is to be reasonably interpreted according to its intent and meaning. A situation within the object, spirit and meaning of the statute falls within it, although it may be without the letter of the law. 'Where the spirit and intention of the legislature in adopting the acts are clearly expressed and their objects and purposes are clearly set forth, the courts are not confined to the literal meaning of the words used, when to do so will defeat the obvious intention of the legislature and result in absurd consequences not contemplated by it.' "

We believe that the power of housing authorities under the Housing Authorities Act to plan, open, and maintain playgrounds for their residents is well within the object, spirit and meaning of the statute, although not specifically enumerated therein. The legislature clearly expressed its spirit and intention in adopting the Housing Authorities Act and clearly set forth the objects and purposes of the statute. Therefore, we are not confined to the literal meaning of the word "parks" inasmuch as it would defeat the obvious intention of the legislature in enacting the statute and would result in the absurd holding that while housing authorities are empowered to plan, open and maintain "parks," they are prohibited from planning, opening and maintaining "playgrounds."

This result we consider absurd in view of the second paragraph of section 2 of the Housing Authorities Act:

> "It is further declared as a matter of legislative determination that the crucial housing shortage which prevails throughout the State has contributed and will continue to contribute materially toward an increase in crime, juvenile delinquency, infant mortality, and disease; that by reason thereof it has become a social and economic imperative to broaden the powers of housing authorities with respect to the acquisition of property, [and] the construction of housing accommodations ***." (Ill. Rev. Stat. 1985, ch. 67½, par. 2.)

Given this statement of the legislative intent behind the statute and its objects and purposes, to hold that housing authorities may combat increasing crime and juvenile delinquency by exercising the specifically enumerated power to plan and open parks, but not by planning and opening playgrounds because that power is not within the letter of the statute, would clearly be contrary to the spirit of the law and the height of absurdity. As such, it cannot be seriously contended that defendant was acting beyond its statutory grant of powers, and thus

in a purely proprietary capacity, in establishing and maintaining the playground and therefore cannot avail itself of the immunity provided by section 3—106 of the Tort Immunity Act.

Lastly, we must address defendant's request under section 2—611 of the Civil Practice Law (Ill. Rev. Stat. 1987, ch. 110, par. 2—611) for attorney fees and costs incurred in the preparation of its reply brief. The amended version of section 2—611, like Federal Rule 11 (Fed. R. Civ. P. 11), after which it was clearly patterned (*Frisch Contracting Service Co. v. Personnel Protection, Inc.* (1987), 158 Ill. App. 3d 218, 511 N.E.2d 831), applies to appellate briefs as "other papers." (*Personnel Protection, Inc.*, 158 Ill. App. 3d at 224; *Thornton v. Wahl* (7th Cir. 1986), 787 F.2d 1151, *cert. denied* (1986), 479 U.S. 851, 93 L. Ed. 2d 116, 107 S. Ct. 181.) Moreover, it is intended to prevent counsel from making assertions of law for which there is no support. *Personnel Protection, Inc.*, 158 Ill. App. 3d at 225; *Thornton*, 787 F.2d at 1153.

Defendant argues that plaintiff's brief clearly warrants the imposition of sanctions under section 2—611. Specifically, defendant asserts that plaintiff makes wildly untrue misstatements and distortions of law for no reason other than delay, harassment and sheer obstinacy.

We disagree. While we have concluded that plaintiff's arguments are ultimately unavailing, we do not believe that they must be characterized as assertions of law for which there is absolutely no support or that they are otherwise interposed for an improper purpose. As such, we decline to impose the sanction requested by defendant.

For all of the foregoing reasons, the order of the circuit court of Cook County granting plaintiff's motion to vacate the dismissal of the second-amended complaint and for leave to file a third-amended complaint is reversed; plaintiff's cause is dismissed; and defendant's motion for attorney fees and costs is denied.

Reversed.

WHITE, P.J., and RIZZI, J., concur.