# Illinois Official Reports

## Appellate Court

***Abrams v. Oak Lawn-Hometown Middle School*,**
**2014 IL App (1st) 132987**

| | |
|---|---|
| Appellate Court Caption | JULIE ABRAMS, Plaintiff-Appellee, v. OAK LAWN-HOMETOWN MIDDLE SCHOOL, OAK LAWN-HOMETOWN MIDDLE SCHOOL DISTRICT 123, and SCHOOL DISTRICT 123, Defendants-Appellants. |
| District & No. | First District, Fifth Division<br>Docket No. 1-13-2987 |
| Filed | March 21, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | In an action arising from the injuries plaintiff student suffered when she fell in defendant school's combined cafeteria and auditorium, or "Cafetorium," the question certified by the trial court for interlocutory appeal pursuant to Supreme Court Rule 308(a) as to whether the immunity provided by section 3-106 of the Tort Immunity Act applies when the area in which an injury occurs is located within a public school where the primary character of the area and overall facility is educational and nonrecreational was answered in the negative and the cause was remanded for further proceedings, since there was no indication that the area where plaintiff was injured was used for recreation, it was not in the scope of the immunity provided by section 3-106, plaintiff's action was not barred, and applying section 3-106 to plaintiff's claim would unreasonably extend a law designed to encourage the development and maintenance of recreational areas. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 13-L-01276; the Hon. William E. Gomolinski, Judge, presiding. |
| Judgment | Certified question answered; cause remanded. |

Counsel on Appeal

Scott Pyles and Mario Carlasare, both of Ratherbun, Cservenyak & Kozol, LLC, of Joliet, for appellants.

William F. Gleason and Christopher I. Petrarca, both of Sraga Hauser, LLC, of Flossmoor, for appellee.

Panel

JUSTICE McBRIDE delivered the judgment of the court, with opinion.
Presiding Justice Gordon and Justice Taylor concurred in the judgment and opinion.

**OPINION**

¶ 1     The issue on appeal is whether an Illinois public school district is shielded from negligence liability when a student is injured in a fall in her school's combined cafeteria and auditorium or "Cafetorium." The school district filed a motion to dismiss the student's tort suit, arguing that the Cafetorium was "public property intended or permitted to be used for recreational purposes" and thus came within the tort liability exemption in section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act. 745 ILCS 10/3-106 (West 1994) (Tort Immunity Act). The trial judge denied the school district's motion and then certified a question for interlocutory appeal. Here, the school district contends the statute plainly applies and that the student cannot maintain her suit, and she counters that her action can go forward because the overall and regular use of the Cafetorium is for educational purposes.

¶ 2     The plaintiff, student Julie Abrams, was at the Oak Lawn-Hometown Middle School at 5345 West 99th Street, Oak Lawn, Illinois at about 6:40 p.m. on April 19, 2012, to take part in an after-school event. Julie was one of the middle school students being inducted that evening into the National Junior Honor Society. Julie allegedly fell and was injured as students and their family members were filing into the school's Cafetorium for the 7 p.m. induction ceremony. In the complaint Julie filed against the school (count I), the school district (count II), and what appears to be a variation of the school district's name (count III), she attributed her accident to "a dark, non-illuminated, elevated, unmarked, [and] uneven surface." Julie did not specify where she was in the room or what she was doing, nor did she give any indication of the nature or extent of her injury. The record indicates, however, that Julie was treated for a broken bone, underwent shoulder surgery, and incurred $35,800 in medical bills. Julie seeks in excess of $50,000 from each defendant.

¶ 3     Photographs and the deposition testimony of school principal Paul Enderle establish the following about the property at issue. The school has about 50 classrooms, the Cafetorium, which is a large, multipurpose room that is equivalent in size to about 5 classrooms

combined, and also has a gymnasium, which is about twice the size as the Cafetorium. The Cafetorium's open main floor is a series of four elevated tiers that face a stage that is approximately three feet tall. The room also holds sound equipment and the control room for the sound and lights. When the room was being used as an auditorium for Julie's event, approximately 400 chairs had been arranged on the tiered floor to face the stage. When the Cafetorium is used as the school's cafeteria, it is set up with foldable tables that have attached stools and wheels so the tables can be compacted and rolled aside when not needed. The room is used daily as the school cafeteria and used regularly for events such as student assemblies, school club meetings, ceremonies and parties for school sports teams, and induction ceremonies for school groups such as the honor society. It is also regularly used for practices and performances of the school band, the chorus, and the drama programs. Taxpayers who live in the school district are allowed to use the Cafetorium for their nonschool-related functions, but this type of use happens less than one or two times per school year. The Cafetorium's tiered floor makes the room unsuitable for athletics and no sporting events have ever been held in the room. When Enderle was told that Julie was injured, he went to look for her before the ceremony started and he found her "sitting on a step." It is unclear from the record whether Enderle was referring to the tiered or stepped main floor, or to a stair.

¶ 4     The specific question certified by the trial court is as follows: "Where an injury occurs on an area of public property which has both recreational and nonrecreational purposes, should Section 3-106 immunity apply when said area is located within a public school where the primary character of the area and overall facility is educational and nonrecreational?"

¶ 5     We address this question *de novo*. *In re Estate of Luccio*, 2012 IL App (1st) 121153, ¶ 17, 982 N.E.2d 927. This is an appeal pursuant to Supreme Court Rule 308, so our task is to answer the specific question and return the parties to the trial court without analyzing the propriety of the underlying order. *Luccio*, 2012 IL App (1st) 121153, ¶ 17, 982 N.E.2d 927; Ill. S. Ct. R. 308(a) (eff. Feb. 26, 2010). This is because appeals generally may be taken only from final judgment orders, but Rule 308 provides for exceptions. *Luccio*, 2012 IL App (1st) 121153, ¶ 17, 982 N.E.2d 927. Pursuant to Rule 308(a), "When the trial court, in making an interlocutory order not otherwise appealable, finds that the order involves a question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, the court shall so state in writing, identifying the question of law involved." Ill. S. Ct. R. 308(a) (eff. Feb. 26, 2010). Then, in our discretion, we may agree to take the appeal. Ill. S. Ct. R. 308(a) (eff. Feb. 26, 2010). Rule 308 is not a means to take an expedited appeal of the underlying order. *Luccio*, 2012 IL App (1st) 121153, ¶ 17, 982 N.E.2d 927.

¶ 6     Local public entities are held to the same standard as private tortfeasors and under the common law have had a duty to exercise ordinary care to maintain their property in a reasonably safe condition. *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 377, 657 N.E.2d 887, 891 (1995). The legislature codified this common law duty in section 3-102 of the Tort Immunity Act, but created immunities and defenses that, if properly raised and proved, will bar a plaintiff's right to recover from a public entity. *Bubb*, 167 Ill. 2d at 378, 657 N.E.2d at 891. The legislature created immunities and defenses to encourage public entities to develop and maintain recreational areas without fear of exposing taxpayer funds to damage awards. *Belton v. Forest Preserve District*, 407 Ill. App. 3d 409, 424, 943 N.E.2d

- 3 -

221, 235 (2011). " ' "Taxes are raised for certain specific governmental purposes; and, if they could be diverted to the payment of the damage claims, the more important work of government, which every municipality must perform regardless of its other relations, would be seriously impaired if not totally destroyed." ' " *Davis v. Chicago Housing Authority*, 136 Ill. 2d 296, 302, 555 N.E.2d 343, 345-36 (1990) (quoting 18 Eugene McQuillin, Municipal Corporations § 53.24 (3d ed. 1963)).

¶ 7    Initially, section 306's immunity was limited to parks, playgrounds, and open areas used for recreational purposes, but even with this and other immunities in effect in the mid 1980's, public entities were being turned down by liability insurers or were being offered unaffordable coverage. *Sylvester v. Chicago Park District*, 179 Ill. 2d 500, 509, 689 N.E.2d 1119, 1124 (1997). In order to reduce the cost of liability insurance, the legislature broadened the scope of immunity, stating in the current version of the statute:

> "Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings[,] or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." 745 ILCS 10/3-106 (West 1994).

Thus, rather than exempting specific types of public property, section 3-106 now provides exemption based on the public entity's intended or permitted use for the property.

¶ 8    In *Davis*, 136 Ill. 2d 296, 555 N.E.2d 343, the court rejected the argument that to claim immunity under section 3-106, the "public property" must be open for use by the general public. 745 ILCS 10/3-106 (West 1994). The Tort Immunity Act defines " 'public property' " and " 'property of a local public entity' " as " 'real or personal property owned or leased by a local public entity.' " 745 ILCS 10/3-101 (West 1994). The recreational property in *Davis* was a playground at a public housing project that was owned, operated, and maintained by Chicago's municipal housing authority. *Davis*, 136 Ill. 2d 296, 555 N.E.2d 343. The play area was for the exclusive use of the tenants, residents, and their guests. *Davis*, 136 Ill. 2d at 298, 555 N.E.2d at 344. The court reasoned that it was neither expressly stated in the statute nor could it be reasonably implied that "public property" for purposes of the Tort Immunity Act is property that the general public can access. *Davis*, 136 Ill. 2d at 300, 555 N.E.2d at 344-45. Even though only certain people were allowed access to the housing authority's playground, the play area was still "public property" within the meaning of the Tort Immunity Act, and the statute barred the young boy's personal injury claim. *Davis*, 136 Ill. 2d at 300, 555 N.E.2d at 344-45. Also, it is the "character and nature of the property as a whole [that] determines the application of section 3-106 immunity, not the [injured party's] use of the property or her activity at the time of her injury." *Adamczyk v. Township High School District 214*, 324 Ill. App. 3d 920, 924, 755 N.E.2d 30, 33 (2001); *Sylvester*, 179 Ill. 2d at 509, 689 N.E.2d at 1124. For instance, in *Hanover Insurance Co. v. Board of Education of the City of Chicago*, 240 Ill. App. 3d 173, 174, 608 N.E.2d 183, 184 (1992), a mason was working, not engaging in any recreational activity, when he was injured on a elementary school playground in Chicago by slipping on cracked and uneven concrete. Relying on the plain language of the statute, the court noted that section 3-106 applies to "*public property* intended or permitted to be used for recreational purposes." (Emphasis added and internal quotation marks omitted.) *Hanover*, 240 Ill. App. 3d at 176, 608 N.E.2d at 185. It does not

apply to *individuals* who are using public property for recreation. *Hanover*, 240 Ill. App. 3d at 176, 608 N.E.2d at 185. Therefore, regardless of what the mason was doing at the time, the fact that he was injured on the school's playground–recreational property–meant the Tort Immunity Act barred his negligence action against the school board. *Hanover*, 240 Ill. App. 3d at 178, 608 N.E.2d at 186-87. In short, because the nature of the property is dispositive, the Tort Immunity Act barred the claims of both the young boy in *Davis* who was playing on public playground when he was injured and the adult in *Hanover* who was repairing the public playground when he was injured.

¶ 9         In *Larson v. City of Chicago*, 142 Ill. App. 3d 81, 86, 491 N.E.2d 165, 168 (1986), the defendant municipality urged the court to find that a public sidewalk in a residential neighborhood was exempted as recreational property, because the plaintiff was injured while roller skating down the walk. However, the court held that focusing on what the individual plaintiff was doing when she was injured on public property was "an unwarranted interpretation of section 3-106." *Larson*, 142 Ill. App. 3d at 86, 491 N.E.2d at 168. The purpose of the statute has been to encourage the development and maintenance and recreational property such as parks and playgrounds, but a residential sidewalk is not a similar open area that the city had developed and designated for recreation. *Larson*, 142 Ill. App. 3d at 86-87, 491 N.E.2d at 168. Accordingly, the Tort Immunity Act did not bar the injured roller skater from pursuing her allegations that the municipality was liable to her because it had negligently maintained its sidewalk. *Larson*, 142 Ill. App. 3d at 86-87, 491 N.E.2d at 168.

¶ 10        *Bubb* is another helpful case because it concerned an elementary school girl in Springfield leaving campus on her bike and accidentally riding off the edge of a wide sidewalk and onto some grass. *Bubb*, 167 Ill. 2d at 374, 657 N.E.2d at 889. The four-inch height difference between the school's sidewalk and its grassy area allegedly caused the child to fall over and get hurt. *Bubb*, 167 Ill. 2d at 374, 657 N.E.2d at 889. The court noted that section 3-106 immunity should not be applied to all school property *per se*. *Bubb*, 167 Ill. 2d at 383, 657 N.E.2d at 893. In determining whether public property is recreational, courts are to consider "whether the property has been used for recreation in the past or whether recreation has been encouraged there." *Bubb*, 167 Ill. 2d at 382, 657 N.E.2d at 893. The school's sidewalk was situated between the grass and an asphalt playground and it was painted with yellow lines to play the game known as four-square. *Bubb*, 167 Ill. 2d at 375, 657 N.E.2d at 889. The principal testified that school children were intended and permitted to play on the sidewalk and that teachers supervising recess allowed children to play in this area. *Bubb*, 167 Ill. 2d at 383, 657 N.E.2d at 893. The plaintiff schoolgirl testified that she and other school children frequently played on the sidewalk that surrounded the school. *Bubb*, 167 Ill. 2d at 383, 657 N.E.2d at 893. These facts indicated the school intended for the area where the injury occurred to be a recreational area for the children, which meant the school district was immunized from the girl's action. *Bubb*, 167 Ill. 2d at 383, 657 N.E.2d at 893.

¶ 11        The court emphasized that the painted four-square lines were just one indicator of intent and that "[c]afeterias and stairwells would not be converted into recreational property simply by schools painting four-square lines on these areas." *Bubb*, 167 Ill. 2d at 384, 657 N.E.2d at 894. The term "permitted" in the statute does not sweep in all public property where recreation might occur or where it is not expressly prohibited. *Bubb*, 167 Ill. 2d at 381, 657

N.E.2d at 893. If "permitted" were given such an expansive interpretation, then section 3-106 immunity would swallow up any liability the public entity has for its property. *Bubb*, 167 Ill. 2d at 381, 657 N.E.2d at 892.

¶ 12    We start our analysis of the public property at issue by noting that the statute does not mention public schools, public school cafeterias, or public school auditoriums. The school's combined cafeteria and auditorium or Cafetorium is obviously not one of the "parks, playgrounds, [or] open [recreational] areas" listed in the statute, but it could possibly be one of the "buildings, or other enclosed recreational facilities" listed there. 745 ILCS 10/3-106 (West 1994).

¶ 13    Even so, there is no indication in the record that the school has ever intended or permitted the Cafetorium to be used for recreational purposes. Instead, in our opinion, the uses that principal Enderle described were all educational or incidental to educational uses, which are nonrecreational uses, with the exception of perhaps the parties and ceremonies for the school sports teams and the occasional meetings convened by local taxpayers. The educational or incidental uses include the room's daily use as the school's lunch room and the various events including student assemblies, school club meetings, and induction ceremonies to school groups such as the honor society. We reject the school district's contention that the school band, chorus, and drama programs make recreational use of the Cafetorium, particularly when giving performances. We find that the students' musical and dramatic practices and performances are part of the educational process and are not recreational uses. Chorus performances, band performances, and school plays occur primarily to instruct the students rather than provide recreation to them, their friends and families, or the community. See *Ozuk v. River Grove Board of Education*, 281 Ill. App. 3d 239, 243, 666 N.E.2d 687, 690 (1996) (indicating that for the purposes of section 3-106, recreation is to amuse, divert, or provide enjoyment instead of instruction); *Wallace v. Metropolitan Pier & Exposition Authority*, 302 Ill. App. 3d 573, 577, 707 N.E.2d 140, 143 (1998) (indicating that for the purpose of section 3-106, recreation includes sports, physical activities, and passive activities that are for relaxation and pleasure). The school has a separate gymnasium for recreational activities.

¶ 14    We conclude the record does not indicate the Cafetorium has been used for recreation in the past or that the school has encouraged recreational use there. Therefore, the Cafetorium is not property that comes within the scope of section 3-106. 745 ILCS 10/3-106 (West 1994). Section 3-106 of the Tort Immunity Act does not bar Julie's action against the school board for the injuries she allegedly suffered when she fell in the Cafetorium. 745 ILCS 10/3-106 (West 1994). Immunizing the school district from tort liability to this plaintiff would be an unreasonable extension of a law whose purpose is to encourage the development and maintenance of parks and similar recreational areas.

¶ 15    Accordingly, we answer the certified question "no" and remand for further proceedings.

¶ 16    Certified question answered; cause remanded.