(No. 77762.—

MARTHA BUBB, Indiv. and as Mother and Natural Guardian of Amy Pavolko, Appellee, v. SPRINGFIELD SCHOOL DISTRICT 186 *et al.* (Springfield School District 186, Appellant).

*Opinion filed October 19, 1995.*

Heyl, Royster, Voelker & Allen (Karen L. Kendall and Craig L. Unrath, of Peoria, and Gary S. Schwab and Kurt M. Koepke, of Springfield, of counsel), for appellant.

William J. Connor, of Berg, Robeson & Connor, P.C., of Springfield, for appellee.

JUSTICE NICKELS delivered the opinion of the court:

The issue presented here is whether a school district is immune from negligence when a student is injured on a school sidewalk that is used for recreation. On September 14, 1990, Amy Pavolko suffered injuries while riding her bike on school property. Subsequently, her mother filed suit in the circuit court of Sangamon County against the defendant school district, individually and on the child's behalf, alleging that defendant was negligent for failing to maintain the school sidewalk in a safe condition. Defendant filed a motion for summary judgment based upon section 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (Ill. Rev. Stat. 1989, ch. 85, par. 3—106). The circuit court denied the motion but certified two questions for interlocutory appeal (134 Ill. 2d R. 308). The appellate court affirmed. (263 Ill. App. 3d 942.) Defendant's petition for leave to appeal was allowed (145 Ill. 2d R. 315).

## BACKGROUND

Amy was injured when she fell from her bicycle while leaving the Enos elementary school in Springfield, where she was a student. A wide concrete sidewalk surrounds the school building, and Amy was injured when she rode her bicycle off the edge of this sidewalk and onto a grass playground. According to the complaint, the edge of the sidewalk is at least four inches higher than the surrounding grassy area. This height difference allegedly caused Amy to fall and injure herself.

Defendant filed a motion for summary judgment based on section 3—106. The statute provides defendant with immunity from negligence in certain circumstances. Specifically, section 3—106 provides:

"Neither a local public entity nor a public employee is liable for an injury where the liability is based on the existence of a condition of *any public property intended or permitted to be used for recreational purposes*, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury." (Emphasis added.) (Ill. Rev. Stat. 1989, ch. 85, par. 3—106.) Plaintiff alleges only ordinary negligence, not willful and wanton conduct. Accordingly, if the statute applies, plaintiff cannot maintain this action.

The record contains photos of the area where the injury occurred. These photos show that yellow lines were painted on the sidewalk near the area where Amy was injured. School children could use these yellow lines to play a game known as four-square. The concrete area adjoins a grass area and an asphalt area that are both used by the school children as a playground.

In support of summary judgment, defendant submitted Amy's deposition. In her deposition, Amy stated that she and other school children often played in the area where the injury occurred. Amy stated that she played in that area "[m]ost of the time." In fact, she would "[u]sually [play] on the concrete," rather than the grass playground. According to Amy, teachers supervised recess and allowed the children to play four-square in this area. Amy also stated that the concrete area on the side of the school where she was injured contained three other four-square areas in addition to the one located a few feet from the site of her injury.

Laine Tadlock, principal of the Enos elementary school, submitted an affidavit in support of defendant's summary judgment motion. She stated that the area where the injury occurred was "public property intended or permitted for use by our school children as a playground and as an area for use by our school children for recreational purposes." She also stated that "school chil-

dren have played four-square and other games and activities in that area."

In response, plaintiff submitted the deposition of the head maintenance worker at the school, Danny Hicks. Hicks stated that the concrete surrounding the school had not been installed to serve specifically as a playground. Hicks personally never saw any children play four-square in the area, but he stated that the four-square lines had been painted on the concrete area to allow the school children to play there if they so desired.

The circuit court denied summary judgment but certified two questions for interlocutory appeal:

"(a) Does § 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act apply if the public property has more than one purpose, one of which is recreational in nature?

(b) Does § 3—106 of the Local Governmental and Governmental Employees Tort Immunity Act apply where a child sustains injury on school property after falling off her bicycle when the front wheel of the bicycle dropped off in an area where children play foursquare?"

On appeal, the appellate court affirmed the denial of summary judgment. The appellate court did not specifically answer the certified questions "yes" or "no" but created an analysis to be used by the trier of fact to answer the questions. Initially, the appellate court recognized a category of property that has both recreational and nonrecreational uses. It called this property "dual-purpose property." The court concluded that "there is immunity under section 3—106 for dual-purpose property where the primary purpose is recreational, however it is used; there is immunity under section 3—106 for dual-purpose property where the primary purpose is nonrecreational, but only where the property is used for recreational purposes." 263 Ill. App. 3d 942, 945.

Thus, the appellate court adopted a two-part analysis to be applied to "dual-purpose property." First, the

"primary purpose" of the property must be considered. Second, the type of activity performed at the time of injury must be considered. If either the primary purpose of the property or the activity performed at the time of injury is recreational, then the statute applies and defendant is immune. The appellate court concluded that under its two-part test genuine questions of material fact remained which the trier of fact would have to decide.

## ANALYSIS

Resolution of this case depends on whether the site of the accident was "public property intended or permitted to be used for recreational purposes" within the meaning of the statute. (Ill. Rev. Stat. 1989, ch. 85, par. 3—106.) This court has not previously addressed the meaning of this statutory language. *Cf. McCuen v. Peoria Park District* (1994), 163 Ill. 2d 125 (holding that the statute did not apply because liability was not based on a "condition" of the property).

Defendant argues that the statute does not authorize a two-part test. Instead, defendant argues, the statutory language sets out the proper test explicitly and the appellate court erred in formulating its two-part test. Defendant argues that the facts show that the sidewalk surrounding the school was public property intended or permitted to be used for recreational purposes. We agree. We reject the analysis of the appellate court for the reasons that follow. In addition, based on the facts contained in the record, we find that defendant is entitled to summary judgment.

We note that local public entities, in general, have a duty to exercise ordinary care to maintain public property in a reasonably safe condition. This duty existed at common law and is now codified in section 3—102 of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—102). (See *Wagner v. City of Chicago* (1995), 166 Ill.

2d 144.) The legislature created no new duties when it enacted the Tort Immunity Act; it created only immunities and defenses. (Ill. Rev. Stat. 1989, ch. 85, par. 1—101.1(a).) Section 3—106 provides a public entity with an affirmative defense, which, if properly raised and proven by the public entity, bars a plaintiff's right to recovery. See *Ramirez v. Village of River Grove* (1994), 266 Ill. App. 3d 930, 932; *Brown v. Chicago Park District* (1991), 218 Ill. App. 3d 612, 618.

By providing immunity, the legislature sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims. (See *Davis v. Chicago Housing Authority* (1990), 136 Ill. 2d 296, 302, quoting 18 E. McQuillin, Municipal Corporations § 53.24 (3d ed. 1963).) Initially, section 3—106 immunity was specifically limited to parks, playgrounds, and open areas used for recreational purposes. In 1986, the legislature amended the statute to apply to "any public property intended or permitted to be used for recreational purposes, including but not limited to parks, playgrounds, open areas, buildings or other enclosed recreational facilities." (Ill. Rev. Stat. 1989, ch. 85, par. 3—106.) Section 3—106 immunity was expanded to cover any recreational property, similar in nature to the types of properties listed in the statute. See *Bonfield v. Jordan* (1990), 202 Ill. App. 3d 638, 645.

In applying section 3—106, we consider the reasoning of other courts that have addressed this statute. No other court has applied the analysis used by the appellate court in this case. These courts have not recognized a distinction based on "dual-purpose property." In addition, they have not adopted a "primary purpose" requirement. The appellate court's analysis is inconsistent with the reasoning of other courts.

In this case, the appellate court based part of its analysis on the type of activity performed at the time of

injury. It stated that the type of activity may be important in determining whether the statute applies. Other appellate decisions, in contrast, have found that the type of activity performed is not significant. (See *Larson v. City of Chicago* (1986), 142 Ill. App. 3d 81 (immunity did not apply to a public sidewalk in a residential neighborhood even though the plaintiff was roller skating at the time of injury).) Instead, appellate panels have considered the nature of the property as a whole to determine if the statute applies. (See, *e.g.*, *Kirnbauer v. Cook County Forest Preserve District* (1991), 215 Ill. App. 3d 1013 (immunity applied to injury occurring near a barricade leading to a forest preserve); *Annen v. Village of McNabb* (1990), 192 Ill. App. 3d 711 (immunity applied to injury occurring at a restroom located in a park); *John v. City of Macomb* (1992), 232 Ill. App. 3d 877 (immunity did not apply to injury occurring on a courthouse lawn).) Immunity therefore depends on the character of the property in question, not the activity performed at any given time.

In *Hanover Insurance Co. v. Board of Education* (1992), 240 Ill. App. 3d 173, 175, the court specifically considered "whether the phrase 'intended or permitted to be used for recreational purposes' refers to the character of the property or to the use of the property by the injured party." In that case, a masonry worker was injured on an elementary school playground. The masonry worker was not engaged in a recreational activity at the time of injury. The appellate court held that the statute requires a consideration of the character of the property only. Thus, the plaintiff's specific use of the property at the time of injury was not a factor.

The court relied on the plain language of the statute. The court noted that the statutory language applies to "*public property* intended or permitted to be used for recreational purposes." (Emphasis added.) (Ill. Rev. Stat.

1989, ch. 85, par. 3—106.) It does not apply to *individuals* who are using public property for recreation. If the legislature had intended to provide immunity based on an individual's use of public property for recreation, it could have used specific statutory language to that effect. The court then noted that the legislature has used such language in other statutes. (*Hanover*, 240 Ill. App. 3d at 176-77 (citing Ill. Rev. Stat. 1989, ch. 85, par. 3—102(a), and Ill. Rev. Stat. 1987, ch. 70, pars. 31 through 37).) In *Hanover*, the plaintiff suffered injuries based on a condition of a playground, which was property intended or permitted to be used for recreational purposes. The *Hanover* court found that summary judgment was proper because of the nature of the public property involved.

We further note that the analysis of the appellate court in this case has been specifically criticized. In *Diamond v. Springfield Metropolitan Exposition Auditorium Authority* (7th Cir. 1995), 44 F.3d 599, the defendant owned and operated a convention center in Springfield. The convention center was used for both recreational and nonrecreational public events. The plaintiff was injured while attending a career-related conference for sexual abuse counsellors at the convention center. The plaintiff argued that the primary purpose of the convention center was not recreational and that the plaintiff was not performing a recreational activity at the time of injury.

The Seventh Circuit rejected the test adopted by the appellate court in this case and found that the defendant was immune under section 3—106. Specifically, the court stated:

> "The test announced in *Bubb* ignores established and well-reasoned Illinois appellate court decisions holding that section 3—106 immunity is triggered by the recreational character of the property, *i.e.*, whether the property in question is 'intended or permitted to be used for recre-

ational purposes.' [Citation.] Nothing in the statute requires an examination of the property's primary purpose. Indeed, an inquiry into a facility's primary purpose would undoubtedly involve genuine issues of material fact, precluding summary judgment in virtually all cases under section 3—106 of the Tort Immunity Act. We do not believe the Illinois legislature intended to create a triable issue of fact each and every time a public entity raised the bar of tort immunity under section 3—106 of the Act." *Diamond*, 44 F.3d at 604.

We agree with the reasoning of these decisions. When interpreting a statute, we seek to ascertain and effectuate the intent of the legislature. (*Solich v. George & Anna Portes Cancer Prevention Center of Chicago, Inc.* (1994), 158 Ill. 2d 76, 81; *Collins v. Board of Trustees of the Firemen's Annuity & Benefit Fund* (1993), 155 Ill. 2d 103, 110.) The best indicator of this intent is ordinarily the plain language of the statute itself. (*Collins*, 155 Ill. 2d at 111.) The statutory language is straightforward. It simply does not support the two-part test created by the appellate court.

The appellate court was apparently concerned that, if the term "permitted" is given an expansive interpretation, "immunity would swallow up any liability of a local public entity for its sidewalks or other public property." (263 Ill. App. 3d at 945.) Immunity would apply to any public property where recreation might occur or where it is not expressly prohibited. The appellate court therefore believed that its analysis was necessary to limit the public areas to which immunity would apply.

We do not believe that section 3—106 applies to any public area where recreation might occur. The statute contains a specific list of recreational property to which the statute applies. This list suggests that the statute applies to recreational property that is similar in nature to that contained in the statute. (See *Larson v. City of Chicago* (1986), 142 Ill. App. 3d 81, 87 (immunity did not apply to a roller skating injury on a public sidewalk in

a residential neighborhood because a public sidewalk is not recreational property like a park or playground); *John v. City of Macomb* (1992), 232 Ill. App. 3d 877, 880 (immunity did not apply to an injury suffered at a band concert on a courthouse lawn because "permitting a band concert, without more, does not so alter the character of a public area not generally used for recreational activity that it would necessarily fall within the intended scope of *** the Act").) In determining the nature of public property, courts have therefore considered whether the property has been used for recreation in the past or whether recreation has been encouraged there.

We further note that, when construing a legislative act, the court should consider each section in connection with other sections. (*Castaneda v. Illinois Human Rights Comm'n* (1989), 132 Ill. 2d 304, 318.) As noted earlier, the legislature codified the general duty of a local government to use ordinary care to maintain public property in section 3—102 of the Tort Immunity Act (Ill. Rev. Stat. 1989, ch. 85, par. 3—102). Section 3—106 provides immunity for recreational property. Providing immunity to any public property where recreation might occur would eviscerate the duty codified in section 3—102. We therefore agree with the appellate court that, at some point, the use of public property for recreation may be so incidental that section 3—106 does not apply.

That concern, however, is not present in this case. The facts here show that the school *intended* that the school children use the property as part of the school playground. Plaintiff does not deny that yellow four-square lines were painted on the concrete to allow the school children to play there. This strongly suggests a recreational intent. Characteristics of the property itself, such as painted markings, are good indicators of

the intent of the public entity. See *Wojdyla v. City of Park Ridge* (1992), 148 Ill. 2d 417, 426 (applying section 3—102).

In addition, the principal stated that school children were intended and permitted to play on the sidewalk. Amy stated that she and other children frequently played on the sidewalk area surrounding the school. Teachers supervised recess and allowed the children to play in this area. Although the primary purpose of the concrete area may not have been recreational, the facts show that the school intended that school children use this area as part of the playground. Public property may have more than one intended use. See *Marshall v. City of Centralia* (1991), 143 Ill. 2d 1, 9-10 (applying section 3—102).

"A motion for summary judgment should be granted when the pleadings, depositions, and affidavits reveal that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (*Williams v. Nagel* (1994), 162 Ill. 2d 542, 547; see also Ill. Rev. Stat. 1989, ch. 110, par. 2—1005(c).) The record in this case contains no genuine issue of material fact. Defendant is therefore entitled to summary judgment.

We note that this conclusion is supported by an appellate decision involving a similar factual situation. In *Ramos v. Waukegan Community Unit School District No. 60* (1989), 188 Ill. App. 3d 1031, the appellate court discussed section 3—106 in the context of an injury to a student occurring on a school sidewalk. In that case, the student was injured while skipping rope on a cracked sidewalk maintained by the defendant. The appellate court found summary judgment for the defendant was required "because of the common use of nonplayground school property to conduct such activities." (*Ramos*, 188 Ill. App. 3d at 1037.) The reasoning in *Ramos* may sug-

gest, to an extent, that a school district would be immune from suit for injuries arising on all nonplayground school property *per se*, unless willful or wanton conduct can be shown. We do not hold that section 3—106 immunity should be applied to all school property *per se*. Instead, application of section 3—106 should be based on a case-by-case examination of the nature of the property and its past use.

Plaintiff argues that a school district can acquire immunity merely by painting four-square lines anywhere in the school, such as in the cafeteria or on stairwells. We find this argument to be without merit. The record shows that the property involved here was used for recreational purposes and recreation was encouraged there. The painted four-square lines are just one indicator of intent. Cafeterias and stairwells would not be converted into recreational property simply by schools painting four-square lines on these areas.

Accordingly, we answer both certified questions in the affirmative. The statute applies if public property is intended or permitted to be used for recreational purposes, regardless of the primary purpose of the property. In addition, based on the record, the statute applies in this case. For the foregoing reasons, we reverse the judgments of the appellate and circuit courts and remand this cause with directions that summary judgment be entered for defendant.

*Certified questions answered;*
*appellate court reversed;*
*circuit court reversed;*
*cause remanded with directions.*