2015 IL App (1st) 140679

FIRST DIVISION
May 18, 2015

No. 1-14-0679

| | | |
|---|---|---|
| JANET Y. FENNERTY, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellant, | ) | Cook County |
| | ) | |
| v. | ) | No. 12 L 3200 |
| | ) | |
| THE CITY OF CHICAGO, | ) | Honorable |
| | ) | Kathy M. Flanagan, |
| Defendant-Appellee. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

**OPINION**

¶ 1    Plaintiff, Janet Y. Fennerty, appeals the order of the circuit court granting summary judgment in favor of defendant, City of Chicago, on plaintiff's personal injury complaint.   On appeal, plaintiff contends the trial court erred in granting summary judgment where (1) the property on which she sustained her injury is not "recreational property" within the meaning of section 3-106 of the Local Governmental and Governmental Employees Tort Immunity Act (Tort Immunity Act) (745 ILCS 10/3-106 (West 2010)); and (2) her allegations raise a genuine issue of material fact regarding whether the city engaged in willful and wanton misconduct.   For the following reasons, we reverse and remand for further proceedings.

¶ 2                                    JURISDICTION

¶ 3    The trial court granted summary judgment in favor of the city on February 26, 2014. Plaintiff filed her notice of appeal on March 11, 2014.    Accordingly, this court has jurisdiction pursuant to Illinois Supreme Court Rules 301 and 303 governing appeals from final judgments entered below.    Ill. S. Ct. R. 301 (eff. Feb. 1, 1994); R. 303 (eff. May 30, 2008).

¶ 4                                    BACKGROUND

¶ 5    On June 5, 2011, around 9:15 p.m., plaintiff was walking her dog and entered the large grassy area located between the two eastbound and two westbound lanes of the 2900 block of Logan Boulevard in Chicago.    This area runs the length of Logan Boulevard and is dotted with trees.    One end of this grassy area also has a bench.    While walking in the grassy area, plaintiff tripped and fell over one of the metal electrical boxes installed to service the electric lights along Logan Boulevard.    The boxes lead to underground vaults, which service the wires for the street lighting and are large enough to allow a person to enter.    In her complaint, plaintiff alleged that the metal box and cover she tripped over was raised approximately three inches above the ground.    Plaintiff sustained injuries consisting of a fractured right fibula and a severe sprain of her left ankle.

¶ 6    In his deposition, city inspector Brendan Russell stated that the boxes were originally installed in the 1940s and 1950s to be level with the surrounding earth surface.    Over the years, however, the earth settled around some of the boxes so that they were no longer level with the ground.    He stated that he was aware that some of the boxes were not level with the ground, but the city did not have an inspection program to identify these boxes.    Russell did not report his observations to the city.    Documents obtained during discovery show that between July 28, 2006 and March 16, 2011, there were 30 electrical service requests for the 2900 block of Logan

Boulevard, bringing workers into the area. Russell stated that he was not aware of "anybody tripping over" the boxes and that "[t]his is the first I'm hearing of it."

¶ 7   Historically, Logan Boulevard was part of the Grand Boulevard "system of parks and interconnected pleasure drives." The area was owned and maintained by the Chicago park district until 1959 when it was transferred to the city. In her deposition, plaintiff stated that she sometimes observed people sitting on blankets and reading, or walking their dogs in the area. She did not allow her children to play there, though, because it was "so close to the traffic." However, she did acknowledge that her children "used to go up there with some of their friends to play like tag football or, you know, throw a baseball once in a while when they got chased out of the front yards and stuff." She recalled that a friend of her son "fell on one of those boxes" and needed 16 stitches on his knee.

¶ 8   Plaintiff filed a complaint against the city. In count I, she alleged that the city carelessly and negligently (1) constructed and maintained the metal box and cover in such a condition to constitute a tripping hazard; (2) failed to maintain the surrounding grassy area so that users could see the raised metal box and cover; (3) provided the area with insufficient lighting; (4) failed to warn of the defective and dangerous condition; and (5) failed to maintain the surrounding ground so as to create a surface level with the box and cover. In count II, plaintiff alleged the city engaged in willful and wanton misconduct regarding the allegations in count I, where it had actual knowledge of the condition of the offending metal box and cover and the settling of the surrounding earth, had actual knowledge that the box was hidden from view by the grass and inadequate lighting, and provided no warning when it had actual knowledge that users were unaware of the hazard. The city filed a motion for summary judgment, arguing that the area in which plaintiff fell is recreational and therefore it is immune from claims of negligence pursuant

to section 3-106 of the Tort Immunity Act. With respect to count II, the city argued that it had no actual knowledge of the condition of the metal box and cover and that the condition was not inherently dangerous. It also contended that the streetlights were not intended to illuminate the grassy areas for pedestrians.

¶ 9 The trial court granted summary judgment in favor of the city, finding that section 3-106 applied and that although the city's failure to discover the defect "may be arguably negligent, it was not willful and wanton" as required under section 3-106. Plaintiff filed this timely appeal.

¶ 10 ANALYSIS

¶ 11 Plaintiff contends that the trial court erred in granting summary judgment in favor of the city. Summary judgment is appropriate where the pleadings, affidavits, depositions and admissions in the record, viewed in the light most favorable to the nonmoving party, show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Hall v. Henn*, 208 Ill. 2d 325, 328 (2003). A triable issue exists where the material facts are disputed or where, given undisputed material facts, reasonable people might draw different inferences. *Williams v. Manchester*, 228 Ill. 2d 404, 417 (2008). The trial court's grant of summary judgment is reviewed *de novo*. *Adamczyk v. Township High School District 214*, 324 Ill. App. 3d 920, 922 (2001).

¶ 12 The trial court below found that the area in which plaintiff fell was recreational property for purposes of section 3-106 of the Tort Immunity Act. Section 3-106 provides, in pertinent part, that:

"Neither a local public entity nor a public employee is liable for an injury where

the liability is based on the existence of a condition of any public property intended or

permitted to be used for recreational purposes, including but not limited to parks,

playgrounds, open areas, buildings or other enclosed recreational facilities, unless such local entity or public employee is guilty of willful and wanton conduct proximately causing such injury."  745 ILCS 10/3-106 (West 2012).

Through section 3-106, the legislature sought to encourage and promote the development and maintenance of recreational areas by immunizing public entities from liability for simple negligence.  *Wallace v. Metropolitan Pier & Exposition Authority*, 302 Ill. App. 3d 573, 576 (1998).

¶ 13    In *Bubb v. Springfield School District 186*, 167 Ill. 2d 372, 375 (1995), our supreme court first addressed the meaning of the phrase "public property intended or permitted to be used for recreational purposes" contained in the statute.  (Internal quotation marks omitted.)  It noted that through section 3-106, the legislature "sought to prevent the diversion of public funds from their intended purpose to the payment of damage claims."  *Id.* at 378.  The court also found significant the fact that while the initial version of the section specifically limited immunity to parks, playgrounds, and open areas used for recreational purposes, in 1986 the legislature expanded immunity to any public property similar in nature to the types listed in the statute.  *Id*.

¶ 14    The court cautioned, however, that finding section 3-106 applies to "any public area where recreation might occur" would be interpreting the statute too broadly and "at some point, the use of public property for recreation may be so incidental that section 3-106 does not apply." *Id* at 382.  Although the primary purpose of the property need not be recreational, for immunity to apply there must be evidence that the property "is similar in nature" to the specific list contained in the statute and has been used for recreation in the past or that recreation has been an encouraged use.  *Id*. at 378.  Therefore the court noted that a public sidewalk, without more, is

not recreational property merely because the plaintiff was roller skating on it when the injury occurred (citing *Larson v. City of Chicago*, 142 Ill. App. 3d 81, 87 (1986)), and an injury suffered at a band concert on a courthouse lawn was likewise not subject to immunity because " 'permitting a band concert, without more, does not so alter the character of a public area not generally used for recreational activity' " so as to bring it within the intended coverage of the Tort Immunity Act (*Bubb*, 167 Ill. 2d at 382 (quoting *John v. City of Macomb*, 232 Ill. App. 3d 887, 880 (1992)).

¶ 15    The relevant question here is whether the grassy area upon which plaintiff fell was "public property intended or permitted to be used for recreational purposes" within the meaning of section 3-106.    Photographs of the area show an open area of grass dotted with mature trees. Bordering each side of the area, running lengthwise, are two lanes of Logan Boulevard.    From the photographs it appears that the grassy area could be either a median between the traffic lanes of Logan Boulevard or a parkway.    In her deposition, plaintiff stated that she does not allow her children to play in the area because it was too close to traffic and too small for playing ball or throwing a Frisbee.    She also stated that although she was walking her dog in the area when she was injured, she only does so on "rare" occasions.    However, she acknowledged that in the past she had observed people sitting on blankets and reading in the area, as well as people walking their dogs there.    She even knew that "against [her] instructions" her boys would go to the area "with some of their friends to play like tag football or, you know, throw a baseball once in a while when they got chased out of the front yards and stuff."    No other evidence was presented regarding the permitted or encouraged use of the property in question.

¶ 16    Viewing the facts in the light most favorable to plaintiff, her testimony is conflicting on the issue of whether the property was used for recreational purposes.    Summary judgment is a

drastic method for disposing of litigation and should only be granted where judgment for the moving party is clearly appropriate. *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992). Conflicting statements by a witness do not provide a sufficient basis to grant summary judgment as "[i]t is not within the province of the trial court to weigh these conflicting statements." *Allstate Insurance Co. v. Tucker*, 178 Ill. App. 3d 809, 813 (1989). We find that a genuine issue of material fact exists as to whether the property is recreational property for purposes of section 3-106, and the trial court's grant of summary judgment in favor of the city was error.

¶ 17 We next address the trial court's grant of summary judgment in favor of the city on the willful and wanton count. Pursuant to section 3-106, the city is not liable for plaintiff's injury unless it "is guilty of willful and wanton conduct proximately causing" her injury. 745 ILCS 10/3-106 (West 2012). In 1998, the legislature amended the Tort Immunity Act to set forth a definition of willful and wanton conduct that courts must use in cases affected by the statute. Section 1-210 provides that a public entity engages in willful and wanton conduct if its actions show "an actual or deliberate intention to cause harm or which, if not intentional, show[] an utter indifference to or conscious disregard for the safety of others or their property." 745 ILCS 10/1-210 (West 2012). The public entity's knowledge regarding the safety of others can be either actual or constructive. *Tagliere v. Western Springs Park District*, 408 Ill. App. 3d 235, 242-43 (2011). However, "willful and wanton misconduct must be manifested by the well-pled facts contained in the complaint." *Majewski v. Chicago Park District*, 177 Ill. App. 3d 337, 341 (1988).

¶ 18 *Tagliere* is instructive. In *Tagliere*, the plaintiff's minor daughter sustained a broken ankle while riding a defective seesaw located in a park owned by the defendant park district.

*Tagliere*, 408 Ill. App. 3d at 236-37. The park district purchased the seesaw from NuToys Leisure Products, Inc. (NuToys), and Landscape Structures, Inc., manufactured the seesaw. *Id.* at 237. After the accident, John R. Gleason, owner of NuToys, inspected the seesaw and found that the spring clamps were out of place and only one out of the usual four bolts used to keep the clamps in place was present albeit not fastened. *Id.* Gleason stated that the defects were obvious. *Id.* A park district foreman testified that he inspected the playground equipment once a month. *Id.* at 238. If he found a piece of equipment defective, it would be "shut down until it is repaired." *Id.*

¶ 19 The foreman testified that he inspected the seesaw approximately two weeks before the accident, as well as after the accident, and he did not observe any defects. He used a checklist provided by the manufacturer in his inspections and looked only for whether the seesaw was "acting the way it's suppose [*sic*] to perform." (Internal quotation marks omitted.) *Id.* The foreman testified that he did not know enough about the seesaw's design to recognize that it was missing the proper clamps and bolts. He further stated that he had no opinion on how the plaintiff was injured, and he was unaware of any complaints regarding the seesaw prior to the accident. *Id.* The director of parks for the park district also testified that he was not knowledgeable about the clamps and bolts mechanism of the seesaw, and that when he inspected the equipment after the accident he could not determine whether it was defective. *Id.* at 239. The director further stated that he believed there was no need to check for "pinch points," which can occur if the equipment is improperly installed, because he was told by NuToys that the equipment was "designed not to pinch." (Internal quotation marks omitted.) *Id.* at 240.

¶ 20 The trial court granted summary judgment in favor of the park district based on its immunity under the Tort Immunity Act, finding that it had no actual knowledge of the seesaw's

dangerous condition. *Id*. at 240. Upon review, this court noted that the requisite knowledge under the statute "can be actual or constructive." (Internal quotation marks omitted.) *Id*. at 242-43. However, the evidence was insufficient to show either actual or constructive knowledge on the part of the park district. Instead, park district employees testified that they did not know bolts were missing from the clamps, or that the missing bolts and misplaced clamps created a defect in the seesaw. *Id*. at 247-48. This court affirmed the trial court's grant of summary judgment, concluding:

> "At most, the failure of [the foreman] to discover the missing spring clamps during
> his inspection was negligent. However, we cannot say the Park District showed an utter
> indifference to or conscious disregard for the safety of others or that it was informed,
> either through actual or constructive notice, of a dangerous condition on the seesaw.
> There is no evidence the Park District knew or should have known others had been
> injured because of the condition, or that it intentionally removed a safety device or
> feature from the seesaw." *Id*. at 248.

¶ 21    In so holding, the *Tagliere* court followed the established rule that to find an entity guilty of willful and wanton conduct under the Tort Immunity Act, one must show it had actual or constructive knowledge of the dangerous condition such that a failure to act or remedy the condition evidenced an utter indifference to, or conscious disregard for, the safety of others. See *Straub v. City of Mt. Olive*, 240 Ill. App. 3d 967, 980 (1993) (complaint sufficiently pled willful and wanton misconduct where it alleged that the defendant city knew of others who had been injured by low-lying wires used to straighten trees in public parks); *Carter v. New Trier East High School*, 272 Ill. App. 3d 551, 557-58 (1995) (dismissal of the complaint was not appropriate where plaintiff alleged that defendant knew others had been injured by the defective

condition of the tennis courts in the past but failed to respond); and *Dinelli v. County of Lake*, 294 Ill. App. 3d 876, 885 (1998) (dismissal proper where plaintiffs "vaguely alleged only one prior injury that may or may not have any similarity" to the accident at issue and therefore the complaint did not plead facts showing the defendant had the requisite knowledge of the dangerous condition).

¶ 22    In her brief, plaintiff here alleges that the city had actual knowledge of the defective condition of the electrical boxes because the earth settling around the boxes was a "longstanding" problem, and it was a "foreseeable" tripping hazard for pedestrians.    Also, the city's employees had knowledge of the electrical boxes located on the property because there had been 30 service requests between July 28, 2006, and March 16, 2011, "which would have brought linemen into proximity of the subject frame and cover, if not actual entry into the vault."    Despite the city's knowledge of the raised condition of the boxes, it had "no inspection program to discover if they are at grade" and to repair the boxes accordingly.

¶ 23    We find that the facts do not support a claim that the city had actual or constructive knowledge of the allegedly dangerous condition.    Although Russell testified that he noticed the raised condition of the boxes, including the one plaintiff tripped over, he never stated that he thought it was defective or dangerous.    He testified that the settling of the area around the boxes occurred naturally over many years.    Furthermore, he stated that he did not inform the city of the condition nor did he know of any prior injury resulting from the condition.    Plaintiff does not allege a prior injury that resulted from the defective condition of the box she tripped over, nor does she allege the city had knowledge of any prior injuries.    In her deposition, plaintiff recalled that a friend of one of her sons "fell on one of those boxes" and needed 16 stitches on his knee, but there was no evidence that anyone reported the incident to the city.    Although the

city's conduct could arguably be characterized as negligent, it did not show an actual or deliberate intention to cause harm or an utter indifference to, or conscious disregard for, the safety of others. Since no genuine issue of material fact exists, the city is entitled to judgment as a matter of law. *Hall*, 208 Ill. 2d at 328.

¶ 24 Plaintiff disagrees, citing *Muellman v. Chicago Park District*, 233 Ill. App. 3d 1066 (1992), as support. However, *Muellman* is distinguishable on the facts. In *Muellman*, the city workers knew the exposed pipes posed a danger to landscaping equipment and had some of the pipes painted so they would be visible to those operating lawn mowing equipment. *Id*. at 1067. Despite this knowledge, the city took no steps to cover the exposed pipes. By only painting the exposed pipes the city determined would damage its equipment, without more, the city "consciously disregarded the safety of the general public." *Id*. at 1069. As discussed above, no evidence was presented that the city knew the condition of the raised boxes was dangerous.

¶ 25 For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded for further proceedings.

¶ 26 Affirmed in part and reversed in part.

¶ 27 Cause remanded for further proceedings.

JANET Y. FENNERTY,

                  Plaintiff-Appellant,

      v.

THE CITY OF CHICAGO,

                  Defendant-Appellee.

No. 1-14-0679

Appellate Court of Illinois
First District, First Division

May 18, 2015

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Presiding Justice Delort and Justice Cunningham concurred in the judgment and opinion.

Appeal from the Circuit Court of Cook County.

The Honorable Kathy M. Flanagan, Judge Presiding.

Law Offices of Robert B. Patterson, Ltd., 205 West Wacker Drive, Suite 900, Chicago, IL 60606, (Robert B. Patterson, of counsel), for APPELLANT.

Stephen R. Patton, Corporation Counsel of the City of Chicago, 30 North LaSalle Street, Suite 800, Chicago, IL 60602, (Benna Ruth Solomon, Myriam Zreczny Kasper and Jeffery A. Waldhoff, of counsel), for APPELLEE.