**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 210593-U

Order filed May 17, 2023

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| BREANNE DUPUIS, | ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois. |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | Appeal No. 3-21-0593 Circuit No. 17-L-115 |
| | ) | |
| RIVERSIDE HEALTH SYSTEM, RIVERSIDE HEALTH SYSTEM d/b/a RIVERSIDE HEALTHCARE; RIVERSIDE HEALTHCARE FOUNDATION; RIVERSIDE MEDICAL CENTER; RIVERSIDE MEDICAL CENTER FOUNDATION, and KANKAKEE VALLEY CONTRUCTION CO., INC., | ) ) ) ) ) ) ) ) ) ) | |
| Defendants | ) ) | |
| (Riverside Health System; Riverside Health System d/b/a Riverside Healthcare; Riverside Healthcare Foundation; Riverside Medical Center; Riverside Medical Center Foundation, | ) ) ) ) ) ) | Honorable Adrienne W. Albrecht, |
| Defendants-Appellees). | ) | Judge, Presiding. |

_____

JUSTICE BRENNAN delivered the judgment of the court.
Justices Hettel and Peterson concurred in the judgment.

_____

**ORDER**

¶ 1    *Held*:    The trial court erred when it granted defendant's motion for summary judgment. Reversed and remanded.

¶ 2    Plaintiff, Breanne Dupuis, appeals from the trial court's order granting summary judgment for defendants, various corporate entities of Riverside Health System (Riverside), in her negligence suit. After Riverside took Dupuis's deposition, it filed a motion for summary judgment, arguing Dupuis failed to raise a genuine issue of material fact that would allow her to recover. Dupuis then attempted to introduce an affidavit in response to Riverside's motion. The trial court struck the affidavit and granted Riverside's motion for summary judgment. For the reasons that follow, we reverse and remand.

¶ 3    I. BACKGROUND

¶ 4    Dupuis was an employee at Riverside Medical Center on January 3, 2017, when she slipped and fell at approximately 10:45 p.m., while on Riverside's campus and on her way to her evening shift. Due to injuries she suffered in the fall, Dupuis sued Riverside.

¶ 5    In the operative complaint, Dupuis alleged negligence against Riverside in that, *inter alia*, Riverside's agents or employees failed to remove a depression in a crosswalk, resulting in an unnatural accumulation of ice; failed to remove the unnatural accumulation of ice; and failed to warn pedestrians or otherwise prevent them from using the crosswalk. She further alleged that "as a direct and proximate result of one or more of the foregoing acts or omissions [Dupuis] fell on ice that collected in the walkway and suffered severe injuries[.]"[1]

---

[1] Plaintiff also alleged negligence against Kankakee Valley Construction Company, Inc., and Riverside filed a cross-claim for contribution. Plaintiff settled her claim against Kankakee Valley Construction, the trial court found the settlement was made in good faith, and plaintiff executed a release. See 740 ILCS 100/2(c) (West 2016) ("When a release *** is given in good faith to one or more persons liable in tort arising out of the same injury or the same wrongful death, it does not discharge any of the

¶ 6        Riverside took Dupuis's deposition. Following the close of discovery, Riverside filed a motion for summary judgment, arguing Dupuis could not, based on her deposition testimony, establish that her slip and fall was caused by an unnatural accumulation of ice in the crosswalk. Dupuis repeatedly indicated she could not remember many details about her fall, and her testimony was far from clear:

> "Q. Immediately before you fell, where were you? Were you on the grass? Were you on the sidewalk? Where were you?
>
> A. I honestly don't remember if I was on the grass, sidewalk or one foot on both. I really don't remember.
>
> ***
>
> A. I remember I did walk on the grass, because there was a car coming. So, I hopped up to the grass. But I don't remember if I had stepped on the—I'm not sure when it gets to this area.
>
> Q. Okay. Do you recall if the grass was icy or wet that day or that evening?
>
> A. I don't remember if it was icy."

Dupuis stated she "did walk on the grass for a little bit" but continued, "I do not remember how many steps I took." In response to counsel for Riverside asking if she could identify where she was immediately before she fell, Dupuis responded, "I couldn't give you the exact location right before I fell. I can show you like the path I was walking, I just don't know where I fell in the walk area." She could not remember which foot gave out first, or if she made it to the sidewalk:

> "Q. Okay. Do you know one way or the other whether you made it from the grass into the sidewalk before you fell?

---

other tortfeasors from liability ***."); *id.* § 2(d) ("The tortfeasor who settles with a claimant pursuant to paragraph (c) is discharged from all liability for any contribution to any other tortfeasor.").

3

A. I believe I made it to the sidewalk, but honestly I can't say yes, I made it to the sidewalk. I really don't remember if I was in the sidewalk and then walking or if I stayed in the grass. I really don't remember."

Reviewing a picture of the location where she fell, Dupuis agreed she was unable to identify precisely where she was standing immediately before she fell, stating, "I can only give you a general idea." In response to counsel for Riverside asking how Dupuis would testify at trial, Dupuis could not answer:

"Q. Here's what I'm worried about. ***. [A]t trial you're telling your lawyer on the stand I was right here. I just don't want to run into that situation. I just want to know where you're going to tell the jury you were standing. You don't know?

A. I really don't remember."

Dupuis could give little detail about the patch of ice that she alleged caused her fall:

"Q. Do you know approximately how big the ice patch was that caused you to fall?

A. I never saw it standing up. So, honestly, I don't remember how big it was, because I was laying on it.

***

A. I fell and broke my ankle. There's not much I remember when that fall happened."

Dupuis remained unable to give a precise location for her fall after reviewing a larger set of photos of the area:

"Q. Looking at all these pictures we've looked at, 12 pictures so far, do any of these pictures refresh your recollection of where you were standing before you fell?

A. Again, I don't know exactly where I was. I can give you like a circle, but I can't give you an exact area."

Reviewing additional photos, counsel for Riverside asked Dupuis to distinguish between the crosswalk ("Where the yellow lines are") and the sidewalk ("the area connected to the crosswalk but concrete, different color"). After confirming that she knew the difference, Dupuis agreed her feet might have been outside the crosswalk at the moment she fell:

"Q. So, you think you may have been standing on the sidewalk immediately before you fell?

A. Yes.

Q. You also could have been standing on the grass immediately before you fell, you're not sure, correct?

A. Correct.

Q. Is it possible you had one foot on the sidewalk and/or one foot on the grass before you fell? Is that a possibility?

\*\*\*

A. That could be a possibility."

Dupuis testified that immediately before she fell, "I was facing towards the crosswalk, I was going to walk that way, the way I was facing," but she could not answer whether her back was to the sidewalk, explaining, "I don't know if my back was to the sidewalk" because "I don't know if I was in the sidewalk. So, I don't know if my back was to the sidewalk." Dupuis agreed she fell "straight down" but could not be more specific:

"Q. We've established that you don't know whether it was one step or more than one step that you took right before you fell in the crosswalk, true?

A. True. I don't remember how many steps it was.

Q. When you fell, did you fall forward or backwards?

A. I fell down.

Q. You fell down, you went—for lack of a better word straight down?

A. Yeah. I don't remember. I was up one second down the next.

I don't remember how everything happened. It was less than a second."

Finally, Dupuis also described what she did immediately after she fell, stating, "I do remember kind of scooting myself backwards, in case another car came," but she clarified that "[i]t might have been my imagination scooting."

¶ 7     Dupuis filed a motion in opposition to the motion for summary judgment and attached an affidavit, in which Dupuis attested:

"1. That on the date of the incident set forth in the complaint, I did not slip, slide, trip or fall while on grass.

2. That on the date of the incident set forth in the complaint, I did not slip, slide, trip or fall while on the sidewalk.

3. That on the date of the incident set forth in the complaint, I did not slip, slide, trip or fall while at the curb.

4. That on the date of the incident set forth in the complaint, I suffered bodily injuries.

5. That the injuries I suffered on that date were the result of a fall.

6. That the fall was the result of my slipping on ice.

7. That the aforementioned slip occurred inside a cross-walk that is depicted in Group Exhibit D #1 attached to my deposition.

6

8. That Group Exhibit D #1 is a true and accurate depiction of the crosswalk where I slipped but taken under different weather conditions and at a different time.

9. That the aforementioned slip occurred at the location I marked on said exhibit.

10. That Group Exhibit D# 2 is a true an accurate depiction of the cross walk I slipped in but taken under different weather conditions and at a different time.

11. That the area I marked on said exhibit is inside the standing water shown in the cross-walk nearest the parking pavilion in Group Exhibit D # 1.

12. That I did not fall at the curb but I had taken steps into the cross walk before slipping at the location shown by the mark I made in Group Exhibit D #1.

13. That on the date of my fall there was an incline going into the garage."

¶ 8    Riverside filed a reply in support of its motion for summary judgment and a motion to strike Dupuis's affidavit, arguing Dupuis made prior "deliberate, unequivocal admissions under oath" during her deposition that were contrary to contentions in her affidavit. Specifically, Riverside argued Dupuis admitted that she did not know how she fell or where she fell.

¶ 9    At various points in the deposition, however, Dupuis agreed with Riverside counsel's implied premise that she had indeed slipped on ice within the crosswalk. She also agreed she could see a depression in a photo of the crosswalk taken under different weather conditions and at a different time. Consider, for example, the following portions of Dupuis's deposition:

"So, picture 2 that either you or your mother took shows a big puddle of water adjacent to the crosswalk that you didn't fall on, true?

THE WITNESS: True

***

Q. *And then it also in your mind captures some water pooling in the crosswalk that you did fall on, true?*

A. Correct

Q. Anything about this picture that sticks out in your mind as to why you took it or what it shows that we haven't already talked about here today?

A. When you look at this picture, you can kind of see that arrow, which is showing that you have to go up, which means the water would come down and pool in that area. ***.

***

Q. *And you're referring to the arrow near the crosswalk where you fell, true?*

A. *True.*

Q. And if we can go back to picture 1 of Group Exhibit D, you said on the record that you are able to see the area where there's a depression, true?

A. Yeah.

\* \* \*

Q. Would you agree with me or not that the pooling of water as indicated on picture 3 of Group Exhibit D is much less in the crosswalk where you fell versus the other crosswalk?

A. Yes. On picture 3, the pooling of water is less—yeah, is less than the crosswalk closest to the garage, than the other puddle.

\* \* \*

Q. *This is a photograph of the crosswalk where you fell, true?*

A. *True.*

8

Q. Do you know approximately how big the ice patch was that caused you to fall?

A. I never saw it standing up. So, honestly, I don't remember how big it was, because I was laying on it.

* * *

Q. *We've established that you don't know whether it was one step or more than one step that you took right before you fell in the crosswalk, true?*

A. *True. I don't remember how many steps it was.*

* * *

"Q. Okay, Do you know—I'm not looking for a medical opinion here, I'm wondering if you can describe for me if you know the mechanics of how you injured your ankle? Did you like twist or what do you know about the moment of injury?

A. I don't remember how I fell. What I do remember is when I went down on the ground, I felt like my ankle was really getting pushed like way out of the socket because it had been displaced, but I felt like I was getting pushed—it was like an uncomfortable pushing, and I don't remember twisting or anything. I just remember going down on top of it pretty much.

Q. Do you know if you slid on the ice before you fell?

A. It was all super fast. I really don't remember if I slid at all.

Q. After you fell, were you able to see the ice?

A. *Yes, after I fell, I knew I was on ice.*

Q. Could you see it?

A. I mean you could see it when the light was reflecting off of it, yes. Mainly it was just that initial—there was really not much I remember from the fall.

*** 

Q. I think you already told me you're not able to estimate how much ice was there, right?

A. No. I don't remember how much ice was on the ground.

Q. Do you know walking in the area where you fell—and more specifically I'm referencing the area where you believe there was a depression—do you know if you were able to tell under your feet that the area is depressed?

A. No. I wouldn't be able to give you [*sic*]. " (Emphases added.)

Dupuis also indicated she was in the crosswalk *after* she fell:

"Q. Do you know when you fell and before you started scooting how your body was positioned in relation to the crosswalk or the hospital or how can you tell?

A. *I honestly don't remember. I just remember thinking if a car comes, I'm going to get run over. So, I don't know how I was laying.*

Q. *You were motivated to get—*

A. *Out of the way.*

Q. *Out of the crosswalk?*

A. *Yes*

Q. As you were scooting to the curb or towards the curb, did you feel ice?

A. I honestly don't remember if I felt ice. It was cold. So, the ground was cold. But I don't know if it was ice or just a cold ground.

Q. Okay. Do you know when you fell and before you started scooting if your body was wholly within the crosswalk? Are you able to tell that for me, or do you not know?

A. I honestly don't remember. *Like I said, the first instinct was to get out of the crosswalk in case a car comes. I don't remember how far I was.*" (Emphases added.)

Moreover, counsel for Dupuis asserted near the end of the deposition that Dupuis had actually circled an area on one of the photographs ("photo number 1") previously introduced and marked "Group Exhibit D." Earlier in the deposition, counsel for Riverside had asked Dupuis to review "picture 1 of Group Exhibit D," and Dupuis confirmed that she could see "the area where there's a depression." Counsel for Riverside asked Dupuis to circle "that area," counsel for Dupuis objected, and after a brief exchange, counsel for Riverside asked about a different photo. Counsel for Riverside later commented, "We've already marked up picture 1." It is unclear, however, whether Dupuis actually drew a circle during the deposition (as she does not acknowledge doing so) and what the circle purported to indicate. Referring to "photo number 1," counsel for Dupuis asked, "Is that your best estimate of where you may have slipped on the night of the occurrence?" Dupuis merely replied, "I don't really remember how far out I was."

¶ 10    In its motion to strike Dupuis's affidavit, Riverside asserted that Dupuis was unable to establish where she was standing before she fell (or immediately after), how she fell, whether she slid, whether the area where she fell had a depression, or whether the area where she fell had ice on the ground. Riverside emphasized those portions of Dupuis's deposition testimony in which she indicated she could not remember the exact location of her fall.

¶ 11    Dupuis filed a response to Riverside's motion to strike her affidavit in which she denied making judicial admissions precluding the finding of a genuine issue of material fact. Specifically, she contended, "Taken as a whole the deposition clearly establishes that [Dupuis] fell in the cross-walk" because at various points she agreed she fell in the crosswalk. She also suggested that none of her deposition statements indicating lack of knowledge about the presence of ice can be deemed judicial admissions that she did not slip on an unnatural accumulation of ice because she is "entitled to introduce expert testimony on the subject."

11

¶ 12    The trial court granted Riverside's motion to strike Dupuis's affidavit and concluded that Dupuis failed to show Riverside was responsible for an unnatural accumulation of water, ice, or snow. The court stated as follows:

> "In the case at hand, the plaintiff has failed to show that there was an unnatural accumulation of snow and ice. More importantly, she has failed to demonstrate that the ice actually caused her fall. In her deposition, she can't recall where she was immediately before her fall; or even how she fell. She has quite simply presented no evidence to demonstrate that the ice upon which she fell was an unnatural accumulation, that the Defendant was negligent, or that the negligence was a proximate cause of her injuries. In short, she has failed to adequately respond to the Motion for Summary Judgment. Therefore, there is no material issue of fact; and the Motion for Summary Judgment will be allowed. ***."

Accordingly, the trial court granted Riverside's motion for summary judgment.

¶ 13    Dupuis timely appealed.

¶ 14                                 II. ANALYSIS

¶ 15    Dupuis first argues the trial court erred when it found she made judicial admissions in her deposition. Second, she argues the trial court erred when it refused to consider her affidavit filed in opposition to Riverside's motion for summary judgment. Third, she argues, notwithstanding the alleged judicial admissions, there were genuine issues of material fact that precluded summary judgment.

¶ 16    We conclude the trial court erred when it granted Riverside's motion for summary judgment because, even setting aside Dupuis's affidavit, there were genuine issues of material fact precluding entry of summary judgment.

12

¶ 17    Summary judgment is properly rendered "if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2016). The movant carries the initial burden of production and may meet its burden by (1) affirmatively demonstrating that some element of the case must be resolved in its favor or (2) establishing there is an absence of evidence to support the nonmovant's case. *Potek v. City of Chicago*, 2022 IL App (1st) 211286, ¶ 30. The purpose is not to try a question of fact, but to determine whether a genuine issue of material fact exists. *Illinois State Bar Association Mutual Insurance Co. v. Law Offices of Tuzzolino & Terpinas*, 2015 IL 117096, ¶ 14. "A genuine issue of material fact precluding summary judgment exists where the material facts are disputed, or, if the material facts are undisputed, reasonable persons might draw different inferences from the undisputed facts." (Internal quotation marks omitted.) *Johnson v. Armstrong*, 2022 IL 127942, ¶ 31. We construe the evidence in the light most favorable to the nonmoving party and strictly against the moving party. *Id.* Summary judgment is a drastic means of terminating litigation and should not be granted unless the right of the moving party is free from doubt. *Id.* We review the trial court's ruling *de novo*. *Id.*

¶ 18    Here, Dupuis alleged Riverside negligently caused an unnatural accumulation of ice by failing to remove a depression in the crosswalk she used to exit the parking lot. Landowners owe a duty of reasonable care to prevent unnatural accumulations of ice and snow on premises in which they have actual or constructive knowledge of the dangerous condition. *Murphy-Hylton v. Lieberman Management Services, Inc.*, 2016 IL 120394, ¶ 20. "Thus, to recover for a slip and fall on ice, plaintiff has the burden of affirmatively proving the ice upon which [s]he fell was an unnatural accumulation caused or aggravated by defendants." *Koziol v. Hayden*, 309 Ill. App. 3d

13

472, 476 (1999). "To avoid a summary judgment, a plaintiff must allege sufficient facts for a trier of fact to find that the defendant was responsible for an unnatural accumulation of snow and ice which caused the plaintiff's injuries." *Judge-Zeit v. General Parking Corp.*, 376 Ill. App. 3d 573, 584 (2007). Speculation alone is insufficient to create a genuine issue of material fact as to whether a defendant is responsible for an unnatural accumulation of snow or ice. See *Tzakis v. Dominick's Finer Foods, Inc.*, 356 Ill. App. 3d 740, 746-47 (2005) (concluding assertion that application of salt to parking lot caused unnatural accumulation of refrozen ice that caused slip-and-fall five days later was insufficient to create genuine issue of material fact).

¶ 19     Riverside based its motion for summary judgment on the assertion that Dupuis made binding judicial admissions in her deposition such that she could not establish at trial that she fell in a crosswalk. A judicial admission is a deliberate, clear, unequivocal statement by a party about a concrete fact within that party's knowledge. *In re Estate of Rennick*, 181 Ill. 2d 395, 406 (1998). A judicial admission made in a discovery deposition conclusively binds a party and may not be contradicted in a motion for summary judgment. *Id.*; see also *Schmahl v. A.V.C. Enterprises, Inc.*, 148 Ill. App. 3d 324, 331 (1986) ("[A] party may not create a genuine issue of material fact by taking contradictory positions, nor may he remove a factual question from consideration just to raise it anew when convenient."). "[W]here the evidence before a trial court consists of depositions, transcripts, or evidence otherwise documentary in nature, a reviewing court is not bound by the trial court's findings and may review the record *de novo*." *Addison Insurance Co. v. Fay*, 232 Ill. 2d 446, 453 (2009).

¶ 20     We disagree that Dupuis made judicial admissions because her deposition testimony contained conflicting statements that give rise to genuine issues of material fact. See *Fennerty v. City of Chicago*, 2015 IL App (1st) 140679, ¶ 16 ("Conflicting statements by a witness do not

14

provide a sufficient basis to grant summary judgment as '[i]t is not within the province of the trial court to weigh these conflicting statements.' ") (quoting *Allstate Insurance Co. v. Tucker*, 178 Ill. App. 3d 809, 813 (1989)). Although Dupuis made many statements in her deposition that give rise to an inference that she could not remember whether she fell within the crosswalk, those statements were not unequivocal because she elsewhere agreed that she *did* fall within the crosswalk. We thus cannot say that Dupuis made a judicial admission that she could not remember where she fell.

¶ 21        Construing the evidence in the light most favorable to Dupuis, her deposition is more nuanced than argued by Riverside, as evidenced by the emphasized portions of her deposition (see *supra* ¶ 9). We conclude the testimony Dupuis gave during her deposition created genuine issues of material fact as to whether she slipped in the crosswalk on ice and whether the ice was an unnatural accumulation. She agreed several times with Riverside's counsel that she slipped on ice and in a crosswalk. Reviewing photographs of the crosswalk where she alleged she fell, taken under different weather conditions and at a different time, Dupuis also described pooling of water in the crosswalk and agreed there was an area with a depression. Dupuis's testimony does not preclude a reasonable trier of fact from inferring that she slipped on an unnatural accumulation of ice in a crosswalk on Riverside's premises. See *Armstrong*, 2022 IL 127942, ¶ 31. Accordingly, Riverside failed to meet its burden of production on its motion for summary judgment in that it failed to establish an absence of evidence to support Dupuis's case.

¶ 22        The trial court erred when it granted Riverside's motion for summary judgment, which should have been denied. We thus remand for further proceedings consistent with this order.

¶ 23                                III. CONCLUSION

¶ 24        For the reasons stated, we reverse the judgment of the circuit court of Rock Island County and remand for further proceedings.

¶ 25        Reversed and remanded.